[No. 14012.   Department Two.   August 29, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v.

H. G. BRUMMETT, *Appellant*.[1]

SALES—CONDITIONAL SALES—REMOVAL OF PROPERTY—OFFENSES—INFORMATION—SUFFICIENCY. In an information for removing and secreting personal property held under a conditional bill of sale, it is not necessary to allege the character of the company or partnership named as vendor or vendee, in view of Rem. Code, § 2629 defining the offense, and providing that it shall be sufficiently definite to describe the conditional sales contract by reference to the date and names of the parties thereto.

INDICTMENT AND INFORMATION—DUPLICITY — CONDITIONAL SALES—REMOVAL OF PROPERTY. An information for removing and secreting personal property subject to conditional sale is not duplicitous in charging both a concealment and removal of property, since they are not inconsistent and both inhere in the same transaction, and may be charged conjunctively though stated disjunctively in the statute.

SALES — CONDITIONAL SALES — REMOVAL OF PROPERTY — DEFENSES. The invalidity of a conditional sales contract for failure to record it, is no defense to a prosecution against one of the parties to it for removing and secreting the property subject thereto, inasmuch as it was valid as between the parties.

WITNESSES—IMPEACHMENT—TESTIMONY AT PRELIMINARY HEARING. After laying proper foundation for impeaching the evidence of the defendants that they had never stated that they were partners, it is admissible to impeach them by witnesses who were present at the preliminary hearing and who testified that they then admitted that they were partners.

CRIMINAL LAW—APPEAL—REVIEW—OBJECTIONS NOT RAISED BELOW. Error cannot be assigned on failure to confine to its impeaching function evidence that should have been introduced in chief, where defendant asked no such instructions below.

SALES—CONDITIONAL SALES — REMOVAL OF PROPERTY — EVIDENCE—ADMISSIBILITY—OTHER CRIMES. In a prosecution for removing and secreting property subject to conditional sale with intent to hinder or defraud the holder of the contract, evidence that defendant sold the car after removal is admissible upon the essential element of his intent, and hence not objectionable as showing the commission of a distinct offense not charged.

[1]Reported in 167 Pac. 120.

APPEAL—REVIEW—HARMLESS ERROR. Corroboration of an admitted fact, introduced out of order when it should have been offered in chief, is harmless error.

SALES—CONDITIONAL SALES—REMOVAL OF PROPERTY—INSTRUCTIONS. In a prosecution for removing and secreting property subject to conditional sale with intent to hinder or defraud the holder of the contract, in which the sole defense was that the conditional sales contract made to a partnership had been abrogated and a verbal sale made to defendant on open account, it is prejudicial error to instruct the jury that, when a written contract has been entered into between two parties, it cannot be varied or changed by any oral agreement or statements of the parties.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered May 20, 1916, upon a trial and conviction of removing and concealing property held under a conditional sales contract. Reversed.

*H. W. Lueders,* for appellant.

*Fred G. Remann, J. W. Selden,* and *C. R. Reeves,* for respondent.

ELLIS, C. J.—The defendant, H. G. Brummett, and one L. C. Tanggard were jointly charged with removing and secreting personal property held under a conditional bill of sale. The charging part of the information is as follows:

"That the said H. G. Brummett and L. C. Tanggard, in the county of Pierce, in the state of Washington, on or about the 2d day of December, nineteen hundred and fifteen then and there being unlawfully, and being in possession of a certain Ford Motor Car under a conditional sales contract or lease, dated July 24th, 1915, and entered into between Automobile Finance Company, vendor, and East End Market, vendee, did then and there and with intent to hinder, delay and defraud the holder of said conditional sales contract or lease, remove said personal property from Pierce county, and conceal the same from the vendor, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Washington."

Defendant demanded and was accorded a separate trial. It was the theory of the prosecution that defendant and

Tanggard, as the East End Market, were partners in the purchase of the car.

Prior to the latter part of June, 1915, defendant was employed in his father's butcher shop, known as the East End Market, in Tacoma. During the latter part of that month, the father sold the market to Tanggard, executing to him a bill of sale which recited a cash consideration. Tanggard, however, testified that the real and only consideration was his agreement to pay the outstanding indebtedness of the business. Defendant continued his employment in the market after Tanggard took possession.

About July 4, 1915, Tanggard decided to install an automobile delivery, and went to Seattle for the purpose of securing a delivery car. Before leaving, he requested defendant to ascertain whether a suitable car could be purchased in Tacoma. During Tanggard's absence, defendant called the R. & W. Auto Company, of Tacoma, by telephone, and was informed that it could furnish a suitable second-hand car. E. S. Robinson, then the sole owner of the R. & W. Auto Company, which was an agent of the Automobile Finance Company, took a car belonging to the latter company to the East End Market for a demonstration. Defendant then told Robinson that it was necessary to have Tanggard's approval of the car. On the following day, Robinson again appeared with the car and it was exhibited to Tanggard, defendant being present. Robinson testified that, at this time, defendant stated that Tanggard and he were partners in the business. Both defendant and Tanggard deny that they ever were in fact, or ever represented themselves to be, partners. The terms of sale agreed to were as follows: Certain minor repairs to the machine were to be made by the vendor. The purchase price was to be $310, upon which was to be made an initial payment of $100, the balance to be paid in installments of $30 a month, with interest at eight per cent per annum on deferred payments, title to remain in vendor till final payment. The repairs having been made, the car

was returned to the market for delivery, but sufficient money had not yet been raised to make the initial payment of $100. Robinson agreed, however, to leave the automobile at the market and accept a payment of $30, the balance of the initial payment to be made in a few days. Tanggard made this payment by giving Robinson his personal check. Subsequently the conditional sale contract was executed, naming Automobile Finance Company as vendor and East End Market as vendee, and signed "R. & W. Auto Co., Agent for vendor," "East End Market, by L. C. Tanggard, vendee." The contract, which recites the receipt of a $100 payment, bears date of July 24, 1915, and was recorded on July 28, 1915. There was evidence tending to show that the machine was delivered to the East End Market more than ten days prior to the recording of the contract.

The car was used by the East End Market until early in August, at which time the business was closed. Tanggard testified that he personally informed Robinson that he had closed the market; that he would, therefore, have no more use for the car; that he understood defendant desired to purchase it; that he would return the car; that, if defendant did agree to purchase it, the conditional sale contract with the East End Market was to be cancelled, and that Robinson agreed to this. Defendant testified that, when one Burt, an employee of Tanggard, returned the car to Robinson on August 5th, defendant went with him; that he talked with Robinson relative to purchasing the car; that Robinson agreed to sell him the car and offered a conditional sale contract for signature, which defendant refused to execute, stating that he wanted to take the machine out of the county, and that Robinson then agreed to sell him the car upon an open account and give him the benefit of the payment previously made by Tanggard. Defendant then paid Robinson $30 upon the purchase price of the car, taking Robinson's receipt therefor, which receipt also allowed credit for the $30 paid by Tanggard. Burt, who was present at the time,

in the main corroborated defendant as to this transaction. Robinson denied that he at any time ever had a conversation with Tanggard touching the cancellation of the contract of the East End Market, and denied that he ever made any separate agreement with defendant.

Thereafter defendant went to McMillan, in Pierce county, taking the car with him. On two or three occasions, representatives of the R. & W. Auto Company called on him personally and requested payment or the return of the car. On these occasions defendant stated that he was unable to pay just then, but promised payment in the future. He refused, however, to return the car without reimbursement for certain "extras" he claimed to have added to it.

In the fall of 1915, defendant started to drive the car to Seattle for the purpose, as he testified, of attending a trial. While enroute the machine broke down, and it was necessary to have it towed to Seattle. It was there placed in storage with one Kay, defendant leaving instructions with Kay to have the machine repaired and he would call for it later. On cross-examination, he admitted that afterwards, in order to pay the repair charges, defendant borrowed the money from Kay, giving him as security a chattel mortgage on the car, and later sold the car outright to Kay. The jury found defendant guilty. From the judgment of conviction and sentence, he appeals.

Appellant first contends that the information is fatally indefinite, in that it fails to specify the character either of the Automobile Finance Company or of the East End Market, and in that it fails to allege a partnership of appellant and Tanggard. The governing statute (Rem. Code, § 2629) reads as follows:

"Every person being in possession thereof, who shall remove, conceal or destroy or connive at or consent to the removal, concealment or destruction of any personal property or any part thereof, upon which a mortgage, lien, conditional sales contract or lease exists, in such a manner as to hinder,

delay or defraud the holder of such mortgage, lien or conditional sales contracts, or such lessor, or who, with intent to hinder, delay or defraud the holder of such mortgage, lien or conditional sales contract, or such lessor, shall sell, remove, conceal or destroy or connive at or consent to the removal, concealment or destruction of such property, shall be guilty of a gross misdemeanor.

"In any prosecution under this section an allegation containing a description of the mortgage, lien, conditional sales contract or lease by reference to the date thereof and names of the parties thereto, shall be sufficiently definite and certain."

The information meets the specific requirements of this section. It was not necessary to allege more.

It is further contended that the information charges more than one crime, in that it charges both a concealment and removal of the car. Concealment and removal are not inconsistent. They may both inhere in the same transaction. Though stated disjunctively in the statute, they may be charged conjunctively in the information. There is no merit in appellant's criticism. *State v. Meyerkamp*, 82 Wash. 607, 144 Pac. 942; *State v. Adams*, 41 Wash. 552, 83 Pac. 1108; *State v. Pettit*, 74 Wash. 510, 133 Pac. 1014; *State v. Klein*, 94 Wash. 212, 162 Pac. 52; *State v. Wingard*, 92 Wash. 219, 158 Pac. 725; *State v. Gipson*, 92 Wash. 646, 159 Pac. 792.

It is next urged that the conditional sale contract was void, in that it was not filed of record within ten days from the date of delivery of the car to the vendee. This objection might properly be raised if the rights of innocent third parties were concerned. But this case does not involve such parties nor their rights. The theory of the state has at all times been that appellant was a copartner with Tanggard in the operation of the market, and, as such, a party to the conditional sale contract. The objection urged to the validity of the contract could not avoid it as between the parties thereto, nor as to third persons taking with actual no-

tice. *Wittler-Corbin Mach. Co. v. Martin,* 47 Wash. 123, 91 Pac. 629; *Malmo v. Washington Rendering & F. Co.,* 79 Wash. 534, 140 Pac. 569, L. R. A. 1917C 440.

Both appellant and Tanggard, when on the witness stand, having denied that they ever were partners or had ever so represented themselves, counsel for the state, on cross-examination, laid the foundation for impeachment by asking each if he did not testify upon the preliminary hearing in the justice court that they were partners in the East End Market. Each denied that he had so testified. In impeachment the state called several witnesses who were present during that hearing, and all testified that both had then admitted that they were partners in the operation of the market. Appellant now urges, but without pointing out any specific reason, that the court erred in receiving this impeaching evidence. It was clearly competent for the purpose for which it was introduced. Its weight and sufficiency were for the jury. *Redford v. Spokane Street R. Co.,* 15 Wash. 419, 46 Pac. 650; *State v. Fetterly,* 33 Wash. 599, 74 Pac. 810. This evidence should either have been introduced as a part of the state's case in chief or confined by instruction to its impeaching function. But appellant asked for no such instruction. He cannot now complain that the evidence was not so confined.

It is insisted that the court erred in permitting in rebuttal evidence that appellant sold the automobile after removing it to King county. It is first urged that this evidence tended to prove a crime separate and distinct from that charged. There are certain well recognized exceptions to the general rule excluding evidence of distinct crimes. Both the general rule and the exception applicable here are well stated in *State v. Pittam,* 32 Wash. 137, 72 Pac. 1042, where it is said:

"It is a well-established rule that it is not competent to show the commission by the defendant of other distinct crimes

for the purpose of proving that he is guilty of the crime charged; but, for the purpose of construing the actions or of ascertaining the intent of the defendant in the commission of the acts proven, other independent culpable acts are sometimes admissible in evidence."

See, also, *State v. Corcoran*, 82 Wash. 44, 143 Pac. 453, Ann. Cas. 1916E 531, L. R. A. 1915D 1015, and cases there cited.

One of the elements of the crime charged was the intent to hinder, delay or defraud the holder of the conditional sale contract. It was as necessary to prove this intent as to prove the removal. The evidence that, after the removal, he sold the car was clearly competent to establish the intent to defraud. It was, therefore, admissible, notwithstanding the fact that it disclosed a separate crime. 8 R. C. L. 201, *et seq.* The court, by an instruction the substance of which was requested by appellant himself, confined the consideration of all evidence of the sale of the car to its tendency to prove fraudulent intent in its removal.

But appellant further contends that this evidence, if proper at all, was admissible only upon the state's case in chief. This objection goes to the order of proof. It is true that, at the close of the state's case in chief, there was little if any evidence to establish an intent to hinder, delay and defraud in the removal of the car. Had appellant then moved for a directed verdict of acquittal, we cannot say that it should not have been granted, but he made no such motion. He voluntarily took the stand in his own defense, and on cross-examination admitted that he not only removed, but mortgaged and afterwards sold the car, thus supplying the evidence of criminal motive, if in fact, the conditional sale contract was never cancelled. The evidence of third persons to the same effect was not rebuttal, but corroboration of appellant's cross-examination. It should have been excluded on that ground, but inasmuch as it corroborated an admitted fact, its reception out of order was plainly harmless.

Appellant assigns as error the giving of the following instruction:

"Under the law a written contract which has been entered into between two parties cannot be varied or changed by any oral agreement or statements of the parties. The written agreement must control and supersede such oral agreements. The contract referred to is a conditional sales contract between the East End Market and the Automobile Finance Company. They are the only parties bound by such contract and the only parties having any right under such contract.

"A contract similar to the one just mentioned is binding upon the parties who enter into the same and retains its full legal effect until such time as such contract is discharged according to law.

"Such a contract is discharged and will have no further legal effect when it has been fully performed between the parties and each has done those things which it agreed to do, in the contract.

"Further, such a contract may be discharged by an express agreement of the parties whereby each of them waives further performance on the part of the other. Such an agreement to discharge the contract may be made orally or in writing by all the parties to the contract. Until the contract has been discharged in one of the manners just indicated it continues in full force and legal effect."

It will be noted that the first sentence of this instruction is not a correct statement of the law, unless it be confined to prior oral agreements. But it is not so confined, except by a most vague inference in the second sentence. When it is recalled that appellant's whole defense in this case was that the original conditional sale contract had been abrogated by a verbal sale to himself on open account, it is plain that this equivocal instruction may have been very prejudicial by leading the jury to believe that such a contract would not discharge the original written contract. Since we cannot say that the jury did not so infer, we are constrained to hold that this instruction was both erroneous and prejudicial. The court should have instructed plainly upon the theory of ap-

pellant's defense, to the effect that, if the jury found that Robinson did orally contract to sell appellant the car on open account, and if, under all the circumstances, appellant had reason to believe, and did believe, that Robinson had authority as agent for the Automobile Finance Company to make such a contract, appellant could not be found guilty as charged.

There are many other assignments of error, but they are either without merit or touch questions which will hardly arise upon a retrial.

The judgment is reversed, and the cause remanded for a new trial.

HOLCOMB, MOUNT, FULLERTON, and PARKER, JJ., concur.