Peter F. COMSTOCK; Ann Fetter; Sue D. Gottfried; Irwin R. Hogenauer and Selma Waldman, Appellants,

v.

UNITED STATES of America, Appellee.

No. 22631.

United States Court of Appeals Ninth Circuit.

Dec. 9, 1969.

Rehearings Denied Jan. 15, 1970 and Jan. 19, 1970.

Barnes, Circuit Judge, dissented in part.

Ronald Meltzer (argued), Francis Hoague, Michael Rosen, Seattle, Wash., for appellants.

John M. Darrah (argued), Asst. U. S. Atty., Eugene G. Cushing, Stan Pitkin, U. S. Atty., Seattle, Wash., for appellee.

Before BARNES and MERRILL, Circuit Judges, and McNICHOLS,* District Judge.

MERRILL, Circuit Judge.

This appeal is taken from conviction under the Assimilative Crimes Act, 18 U. S.C. §§ 7, 13, of the crime of unlawful assembly as defined by Washington state law, R.C.W. 9.27.060(2). Appellants attack the Washington statute as unconstitutional.

Appellants do not contend that the conduct with which they are charged was constitutionally protected.[1] Whether

* Honorable Ray McNichols, United States District Judge for the District of Idaho, sitting by designation.

1. The incidents leading to the arrests are described in Appellants' brief as follows:

"On October 17, 1967 at approximately 8:30 a. m. a group of some 200 persons gathered around the Federal Office Building located at 1st and Marion Street in the City of Seattle,

Washington might, by a properly drawn statute, have made this conduct criminal is not in issue. Appellants contend that the statute under which they were charged and convicted is unconstitutional upon its face as overbroad. Despite its ancient origin [2] Washington state courts have not yet been called upon to construe it.

As applied to this case the relevant portion of the statute reads:

"Whenever three or more persons shall assemble with intention * * * [t]o carry out any purpose in such manner as to disturb the public peace * * * such an assembly is unlawful, and every person participating therein by his presence * * * shall be guilty of a gross misdemeanor."

Appellants' attack on the statute is leveled at its reliance on disturbance of the public peace as an element of the offense. They contend that in the absence of express language or an authoritative construction so limiting the phrase as to exclude constitutionally protected activities, "disturbance of the public peace" is so broad that it has a serious "chilling effect" on the exercise of First Amendment rights.

In our judgment the authorities cited by appellants, while in some instances using language suggesting such a rule, have not yet made it clear that the true rule goes this far.

Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), Ed-

wards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), and Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) were cases involving state prosecution under state statutes or common law doctrines declaring breach or disturbance of the peace to be a crime. In each instance the conduct of the defendants was held to be constitutionally protected and conviction of the defendants under the statute demonstrated that the statute as construed by the state was overbroad. In Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), the construction of the statute by the state trial judge in his charge to the jury was so broad as to include constitutionally protected activity.

These cases, then, did not strike down a statute solely because of the breadth of language used. It was the statute as applied and as authoritatively construed that was held to be overbroad. Conversely in Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965), a similar statute was saved because it had been narrowly construed by the state supreme court to exclude constitutionally protected activity.

In a federal case under the Assimilative Crimes Act, where the state statute has not been construed by the state courts, the question facing the federal court is whether the statute, absent a limiting state construction, is too broad on its face. This was the problem faced in United States v. Woodard, 376 F.2d

---

Washington. Shortly thereafter many of these people entered the building in groups of 5 to 10 and entered the office of Group A of Local Selective Service Boards of King County, Washington, located in this building. The entrance and exit of these persons was orderly and peaceful and the normal operation of the board continued. At about 8:50 a much larger crowd of people entered the building, so that it became difficult to enter the Selective Service Office.

At approximately 10:30 a. m. a number of persons sat down in a double doorway, the entrance to the Selective Service Office, and in a doorway leading to a small foyer some 20 feet to

the east of the entrance to the Selective Service Office.

These people were quite peaceful and made no disturbance except for blocking the doorway.

All of the appellants were identified by various police officials as being persons arrested by them for blocking either of the afore-described doorways."

2. Legislative history set forth in Rev.Code of Wash. reads:

"Enacted Laws 1909 ch. 249 § 298 p. 981. Based on:
(a) Code 1881 §§ 859–861.
(b) Laws 1873 p. 197 §§ 73, 74, Laws 1854 p. 87 § 65. See RRS § 2550."

136 (7th Cir. 1967). The court there held that it would not presume that state courts, faced with the alternatives of broad or narrow construction of a statute making "disorderly conduct" a crime, would so construe the statute as to include constitutionally protected activities. Since the conduct of the defendants (there as here) was not constitutionally protected, the conviction was upheld.

We regard *Woodard* as distinguishable. Here it is not disorderly conduct or disturbance of the peace that was made criminal. As we have noted it may be said that such language does not upon its face intrude upon the First Amendment; that it is only through overbroad construction and application that intrusion occurs. Here, however, it is assembly—a subject of the First Amendment—that under specified circumstances is made unlawful.[3]

In our judgment Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966), controls under these circumstances. There the state crime was common law criminal libel. The state court charged that it included any writing calculated to create disturbances of the peace. The common law doctrine as so applied was struck down. As we read the Court's holding it is that when criminal restraints are directly imposed upon activity with which the First Amendment is concerned that which is made unlawful must be so defined as to exclude constitutionally protected areas expressly and unambiguously; that "disturbance of the public peace," being imprecise, cannot serve to define, in terms of crime, an exception to the rights to speak, write or assemble.

Mr. Justice Harlan, concurring in Garner v. Louisiana, 368 U.S. 157, 202–203, 82 S.Ct. 248, 272, 7 L.Ed.2d 207 (1961), while concerned with freedom of expression under the Fourteenth Amendment, deals with this principle. He states:

"But when a State seeks to subject to criminal sanctions conduct which, except for a demonstrated paramount state interest, would be within the range of freedom of expression as assured by the Fourteenth Amendment, it cannot do so by means of a general and all-inclusive breach of the peace prohibition. It must bring the activity sought to be proscribed within the ambit of a statute or clause 'narrowly drawn to define and punish specific conduct as constituting a clear and present danger to a substantial interest of the State.' * * *

These limitations exist not because control of such activity is beyond the power of the State, but because sound constitutional principles demand of the state legislature that it focus on the nature of the otherwise 'protected' conduct it is prohibiting, and that it then make a legislative judgment as to whether that conduct presents so clear and present a danger to the welfare of the community that it may legitimately be criminally proscribed.

■ Accordingly, at least until Washington has placed a suitably restrictive construction upon it, we hold this statute to be constitutionally infirm as a basis for federal prosecution under the Assimilative Crimes Act. *Cf.* Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

■ Appellant Hogenauer challenges his summary conviction of contempt of

---

3. We reject the suggestion that while the statute is couched in terms of assembly it is really directed at a multiparty disturbance of the peace. What is made unlawful is not the overt act of disturbance but the presence of a person at an unlawful assembly. Further it is not the fact that a disturbance has been created by those assembled that renders the assembly unlawful but the intention, fulfilled or unfulfilled, of three or more of the assembled persons. Still further, despite these overtones of conspiracy, the crime is not limited to those entertaining the disturbing intentions. It apparently attaches to every person present, regardless of his own intent or knowledge of the intent of others. See: United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967).

court for conduct immediately following the court's rendition of judgment. The following occurred:

Adjournment of court was announced. Hogenauer did not rise. He was admonished to rise. He refused. He was directed by the judge to approach the bench. He refused. When the Marshal took him by the arm and forceably led him to the bench he went limp and as the court addressed him lay prostrate on the floor. At a subsequent court session the judge sentenced him to 15 days for contempt of court.

18 U.S.C. § 401 provides that the court may punish as contempt: "Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice."

Rule 42(a), F.R.Cr.P. provides: "A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."

Hogenauer contends that his conduct did not amount to obstruction of justice and that the circumstances were not such as to justify summary punishment. In both respects we disagree. United States ex rel. Robson v. Malone, 412 F.2d 848 (7th Cir. 1969).

Judgment of conviction of unlawful assembly is reversed.

Judgment of conviction of contempt of court is affirmed.

BARNES, Circuit Judge (concurring in part and dissenting in part).

I agree with that part of the majority opinion finding appellant Hogenauer guilty of contempt, but, as to the first portion of the opinion finding the Washington breach of the peace statute unconstitutional on its face, I must respectfully dissent. I summarize two reasons for my disagreement with the majority on the issue of constitutionality:

*First,* I cannot agree that the case of Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469, stands for the broad principle that " 'disturbance of the public peace,' being imprecise, cannot serve to define, in terms of crime, an exception to the rights to speak, write or assemble." (Maj. op. p. 1130) *Second,* I cannot agree with the suggestion of the majority in footnote 3 of the opinion that:

"What is made unlawful is not the overt act of disturbance but the presence of a person at an unlawful assembly. Further it is not the fact that a disturbance has been created by those assembled that renders the assembly unlawful but the intention, fulfilled or unfulfilled, of three or more of the assembled persons. Still further, despite these overtones of conspiracy, the crime is not limited to those entertaining the disturbing intentions. It apparently attaches to every person present regardless of his own intent or knowledge of the intent of others." (Citation omitted)

In Ashton v. Kentucky, *supra,* the Supreme Court held:

"We agree with the dissenters in the Court of Appeals who stated that: ' * * * since the English common law of criminal libel is inconsistent with constitutional provisions, and since no Kentucky case has redefined the crime in understandable terms, and since the law must be made on a case to case basis, the elements of the crime are so indefinite and uncertain that it should not be enforced as a penal offense in Kentucky.' " 384 U.S. at 198, 86 S.Ct. at 1409.

This language convinces me that the Court was concerned primarily with the uniquely inscrutable characteristics of *English common law criminal libel.* There is added support for this reading of the case in the closing paragraphs of the opinion in which Mr. Justice Douglas refers to *Cox* and *Edwards (post)* opinions in the following manner:

"Convictions for 'breach of the peace' where the offense was imprecisely defined were similarly reversed in Edwards v. State of South Carolina, 372 U.S. 229, 236–238, 83 S.Ct. 680,

683–684, 9 L.Ed.2d 697, and Cox v. State of Louisiana, 379 U.S. 536, 551–552, 85 S.Ct. 453, 462–463, 13 L.Ed.2d 471. These decisions recognize that to make an offense of conduct which is 'calculated to create disturbances of the peace' leaves wide open the standard of responsibility. *It involves calculations* as to the boiling point of a particular person or a particular group, not an appraisal of the nature of the comments *per se. This kind of criminal libel* 'makes a man a criminal simply because his neighbors have no self-control and cannot refrain from violence.' Chafee, Free Speech in the United States 151 (1954)." (384 U.S. at 200, 86 S.Ct. at 1410) (Emphasis added)

It seems clear to me that the Court was simply applying the *Cox* and *Edwards, supra,* tests to the Kentucky criminal libel statute, and was not articulating a more stringent standard for testing the constitutionality of *all* breach of the peace statutes. I find this significant because I agree with the majority that *Cox* and *Edwards* do not stand for the proposition that " 'disturbance of the public peace' is so broad that it has a serious chilling effect on the exercise of First Amendment rights." (Maj. op. p. 1129) In short, *Cox* and *Edwards* did not sound the death knell for all statutes defining illegal conduct in terms of breach of the peace.

I do not think that the use of the terminology "unlawful assembly" for the purpose of defining what is essentially breach of the peace should require us to view this statute differently from the one challenged and upheld in Woodard v. United States, *supra,* which the majority finds distinguishable. (Maj. op. p. 1130) The recent case of Heard v. Rizzo, 281 F.Supp. 720 (E.D.Pa.1968, three-judge court), affirmed per curiam, 392

U.S. 646, 88 S.Ct. 2307, 20 L.Ed.2d 1358 supports this proposition.

In *Heard* the constitutionality of the Pennsylvania Riot Statute (18 P.S. § 4401) was upheld. The statute read in part as follows:

" 'Whoever participates in any riot, rout, *unlawful assembly* or affray, is guilty of a misdemeanor, * * * ' " (Emphasis added)   281 F.Supp. at 739.

The statute was attacked as vague and overbroad on the ground that the Pennsylvania Supreme Court had not defined its terms with sufficient specificity so as to proscribe only conduct unprotected by the First Amendment. The three-judge panel rejected this argument finding it was proper to accord to the terms of the statute their well-established common law definitions.[1]

Specifically, they said:

"Although the Pennsylvania courts have not defined the terms 'rout', 'unlawful assembly' or 'affray', these terms are capable of quite precise definition at common-law. Furthermore, there is nothing that would lead this court to conclude that these terms would be given (or could be given) any definition by any Pennsylvania court other than these common-law definitions." 281 F.Supp. at 740.

The court then quoted the common law definition of unlawful assembly from Black's Law Dictionary at 1705:

*"Unlawful Assembly.* At common law. The meeting together of three or more persons, to the disturbance of the public peace, and with the intention of co-operating in the forcible and violent execution of some unlawful enterprise. If they take steps towards the performance of their purpose, it becomes a *rout;* and, if they put their design into actual execution, it is a *riot.* 4 Bl.

---

1. The district court panel quoted from the case of United States v. Turley, 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed. 2d 430, which dealt with the construction of common law words in federal statutes.

"We recognize that where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning."

Comm. 146. To constitute offense it must appear that there was *common intent of persons assembled* to attain purpose, whether lawful or unlawful, by commission of acts of intimidation and disorder likely to produce danger to peace of neighborhood, and actually tending to inspire courageous persons with well-grounded fear of serious breaches of public peace." (Emphasis added except for "rout" and "riot")

I am impressed with the similarity between the elements of the Washington statute and those of the common law definition that was viewed with approval in *Heard, supra.* Therefore, I conclude, as did the *Heard* panel, and as the Supreme Court may have concluded in affirming *per curiam,* that there is no reason to presume that the Washington courts will accord anything but a constitutional interpretation to the statute.[2]

In footnote 3 of the majority opinion, it is suggested that the words of the statute could be applied to attach criminal liability to *all persons* in any assembly that contained as few as three persons disturbing or intending to disturb the peace.[3] Although the statute is not a paragon of legal precision, I think only a strained reading of it could result in such a blatantly unconstitutional interpretation.

As I read the statute, whenever three or more persons do or intend to do certain acts, they constitute an unlawful assembly. These same persons, by being present at such an assembly with intent to disturb the peace or by actively aiding or instigating breach of the peace, thereby incur criminal liability.

In order to reach the result suggested by the majority, it is necessary to accord a different and much broader meaning to the word "assembly" in the operational portion than is accorded to the word "assemble" in the definitional portion. I do not think this is in line with sound principles of statutory construction. It seems clear to me that the assembly that is made unlawful is comprised only of those persons who have assembled with the requisite intent to do, or those who have done, the specified acts.

In addition, I do not read the words "and every such person participating therein by his presence" as arbitrarily including innocent bystanders in an unlawful assembly simply by the fortuity of their presence near those engaging in illegal conduct. It seems to me that the word "persons" in the operational portion of the statute must refer to the same "three or more persons" engaging in the conduct specified in the definitional portion. Specifically, they are guilty of a gross misdemeanor if (1) they intend or actually do breach the peace, and (2) they are present and participating either by act or with intent to act with at least two other persons.

In short, while I think that the draftsmen could have used more precise language in writing the statute, I do not

2. I find no evidence whatever of threats or attempts to apply the statute in an unconstitutional manner. Thus I find the majority's citation of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (at p. 1130 Maj. op.) to be inapposite. *Cf.* Landry v. Daley, 280 F.Supp. 938, 948 (D.C.1968), appeal dismissed, 393 U.S. 220, 89 S.Ct. 455, 21 L.Ed.2d 392, docketed for reargument *sub nom.* Boyle v. Landry, 395 U.S. 955, 89 S.Ct. 2095, 23 L.Ed.2d 744 (No. 6 current term).

3. The statute in full reads as follows: "9.27.060 Unlawful assembly: Whenever three or more persons shall assemble with intent—

(1) To commit any unlawful act by force; or,

(2) To carry out any purpose in such manner as to disturb the public peace; or,

(3) Being assembled, shall attempt or threaten any act tending toward a breach of the peace, or an injury to persons or property, or any unlawful act—such an assembly is unlawful, and every person participating therein by his presence, aid or instigation, shall be guilty of a gross misdemeanor."

think an integral reading of it raises any significant possibility of the unconstitutional application feared by the majority. Nor, as I discussed earlier, do I think that the words "unlawful assembly", which have a well-established common law definition, are so inherently overbroad or vague that they create a chilling effect on First Amendment rights. Therefore, I would affirm the judgment of the district court.