[No. 40971. En Banc. January 14, 1971.]

THE STATE OF WASHINGTON, *Appellant,* v. AARON DIXON *et al., Respondents.**

*Reported in 479 P.2d 931.

*Charles O. Carroll, Neal J. Shulman* and *David W. Hotchkin,* for appellant.

*Ronald J. Meltzer, Edmund J. Wood,* and *Michael H. Rosen,* for respondents.

HALE, J.—Surround most any straightforward proposition with enough sophistry and it will vanish—or become unintelligible. The law, like other intellectual disciplines, has tried to cope with the sophistry brought to bear upon it by applying common sense. This has, on occasion, proved to be the only mechanism available by which to dissipate the fog of rhetoric generated around some legal propositions— particularly principles of constitutional law. The Constitution of the United States declares that one of the great aims

of free government is to insure domestic tranquility. Common sense dictates that, without the assurance of domestic tranquility, the other great aims of free government will remain unachieved, and the individual rights upon which they depend will vanish. There is nothing unconstitutional about common sense.

Three defendants here appealed to the superior court from their district justice convictions of violating the unlawful assembly statute. RCW 9.27.060 (2) and (3). Holding the statute unconstitutional and void under what has been sometimes described as the constitutional doctrines of vagueness and overbreadth, the court ordered the complaint dismissed. The state now appeals both the order of dismissal and the declaration of unconstitutionality.

As we understand the record, defendants did not directly challenge the language or meaning of the complaint upon which they had been and were about to be tried; nor claim that they could not understand what it meant; nor that, because of the complaint's vagueness and uncertainty, they were unable to prepare a defense. Instead, defendants directed their attack toward the whole statute under which in justice court they had been tried and convicted. Taking a panoramic view of the statute and without referring to the facts of the case, the superior court held it void per se.

The statement of facts in this case consists entirely of colloquy, argument and commentary upon the law, with only peripheral references as to what facts the prosecution claimed had been earlier shown or would be shown at trial. We have had to piece the record together, consequently, from the transcript, briefs and argument to find out what happened and of what the defendants were convicted in the first place.

 The order of dismissal was unusual in form as the court, before signing it, so aptly indicated, as follows:

> THE COURT: Mr. Meltzer, that is a fine editorial in the order. MR. MELTZER: Well, I might say, Your Honor, I took most of the matters in there from your oral opinion which I had transcribed, and I believe I have—I might not have used your language word for word but I have

tried to enunciate the ideas that you—THE COURT: I think you improved on it. I think it is fine, but I wonder whether that is appropriately in an order. MR. MELTZER: I felt this way, Your Honor: If this matter is appealed, which I assume it will be, that the Supreme Court should have before it at least some idea of what at least was in your mind as I have had it transcribed when you made your ruling. If the Court feels that this could be done equally with your oral opinion I am not going to object to your striking it, but this was my purpose in doing so.

and

THE COURT: Well, it is very unusual to enter an order of this nature, Mr. Meltzer. It sort of offends my sense of orderliness to have it presented in that fashion. MR. MELTZER: If Your Honor wishes, I feel if I strike what you described as my editorializing, I imagine it would probably read the way I—THE COURT: If I recall—I don't have my oral decision before me now, but you do incorporate my notes, so I have no objection at all to the content except as to its propriety in being in an order of this nature.

The order of dismissal does, however, provide a basis for appeal in this case for the state excepted to its entry and all of the recitals set forth in it, and now appeals both the dismissal of the cause and the ruling of unconstitutionality. Assignments of error run to both the effect of the order and the legal conclusions in it. We agree with the court's evaluation that the order amounts to an editorializing, but will treat the order as a written memorandum of opinion showing in summary some of the court's views in declaring the statute unconstitutional and void. *See* Appendix. We think it a better practice, however, that judicial opinions be identified as such in the record and be included in the statement of facts or, if fully verified, in the transcript.

Only a few peripheral references to the facts of the case appear in the statement of facts and neither party supplied the record with even a brief summary of the evidence upon which the justice court conviction rested, or of what the state would attempt to prove in superior court. The court knew that the justice court complaint arose out of events occurring in the principal's office at Franklin High School.

The record does show explicitly that the defendants here were three of five individuals charged in district justice court in a complaint phrased substantially in the language of the statute,[1] and tried by a jury which returned verdicts of guilty against these three defendants and acquitted the other two. It was clear to the court in the instant case, we think, that the state had proved in justice court to the satisfaction of the jury and would attempt to prove again in superior court that the defendants had entered the principal's office at Franklin High School in Seattle, had refused to leave when requested and had remained there for several hours, committing physical damage to the premises and furnishings while there.[2] The conduct charged as a violation is of some moment in assessing the constitution-

[1] "They, the said AARON DIXON, TROLLIS FLAVORS, LARRY GOSSETT, RICHARD GOSSETT, and CARL MILLER, and each of them, in the County of King, State of Washington, on or about the 29th day of March, 1968, willfully and unlawfully did assemble with two or more persons with the intent to carry out a purpose in such manner as to disturb the public peace, and while being assembled with two or more persons did attempt or threaten an act tending toward a breach of the peace and injury to persons or property, and they and each of them did participate in the act or acts herein charged by their presence, aid, or instigation; contrary to the provisions of RCW 9.27.060 (2) and (3), and against the peace and dignity of the State of Washington."

[2] Appellant state set forth the following statement of the case in its brief:

The charge was based on an incident occurring at Franklin High School in the city of Seattle on March 29, 1968, wherein the accused allegedly organized and led a group, variously estimated at fifty to seventy-five persons into the office of the school principal in a loud and clamorous confrontation, where the principal was physically manhandled and threatened with being held a "hostage" until certain demands were met. The principal's small office was filled to overflowing by the demonstrators. After the principal effected his withdrawal, the accused and their group continued to hold the office for several hours during which they succeeded in effectively jamming the school's communication system with the outside world. When the group at length vacated the office, it was found that the principal's papers and records had been scattered around, some missing, and some hopelessly mutilated, the woodwork had been carved upon, holes had been burned in the rug, eggs had been smeared on walls and furniture, a plumbing fixture in the principal's washroom had been ripped from the wall, and water had been permitted to overflow the office floor. As a result of the incident,

ality of the statute for defendants attack its application here as well as its substance. *See Comstock v. United States,* 419 F.2d 1128 (9th Cir. 1969).

The instant case was not simply a suit for a declaratory judgment of unconstitutionality, but an appeal from judgments of conviction in justice court. The unlawful assembly statute which the defendants were convicted of violating and which the court declared void reads:

Whenever three or more persons shall assemble with intent—

. . .

(2) To carry out any purpose in such manner as to disturb the public peace; or,

(3) Being assembled, shall attempt or threaten any act tending toward a breach of the peace, or an injury to persons or property, or any unlawful act—such an assembly is unlawful, and every person participating therein by his presence, aid or instigation, shall be guilty of a gross misdemeanor.

RCW 9.27.060(2) and (3).

█ Unless a criminal statute is so glaringly unconstitutional, so palpably in derogation of specifically enumerated and declared constitutional rights that reasonable men could not differ about it, its constitutionality should be tested in the light of some kind of behavior, actual or hypothetical. Courts do not operate in a vacuum. Knowledge of the facts which evoked the issues of law is usually essential to an understanding of the law to be applied. A criminal statute, colorably valid, cannot ordinarily be plucked out of thin air, so to speak, and be made the subject of a sensible judicial analysis. Even a suit for a declaratory judgment of statutory interpretation must pos-

which occurred on a regular school day, classes had to be dismissed and the school closed for the day. Many of the group involved, including the respondents herein, had no connection with Franklin High School, either as students, parents or employees.

Respondents made no counterstatement of the case nor in any way refute, deny or question that the charges in the complaint were based on a series of events occurring at Franklin High School. They do question the relevance of the foregoing statement in this appeal.

tulate some events, imminent or threatened, before the courts will rule on the statute's validity, meaning or application. *See* Appendix. In *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522 (1967), where a loitering ordinance substituted the subjective judgments and personal prejudices of a police officer for the law itself by making it a criminal offense for the accused to "fail to give a satisfactory account of himself upon the demand of any police officer," this court found it necessary to elucidate the rationale with a margined narration of the operative facts. *Seattle v. Drew, supra,* at 407, n. 3.

Defendants here, as noted, challenged the statute—but not the complaint—for vagueness, indefiniteness and uncertainty. Not having moved against the complaint per se as they had a right to do, they must be deemed to have found it legally sufficient. A complaint, information or indictment, though sufficient to charge a crime, may be subject to attack because it is too indefinite or uncertain to enable the accused to prepare his defense. It is also subject to a demand for a bill of particulars. *See State v. Royse,* 66 Wn.2d 552, 403 P.2d 838 (1965). Ordinarily, if the offense is one created by statute, the offense may—as was done here —be charged in the language of the statute. *State v. Howard,* 157 Wash. 183, 288 P. 236 (1930); *State v. Tiffany,* 44 Wash. 602, 87 P. 932 (1906). If the statutory language is too indefinite or uncertain to enable the accused to prepare a defense to it and plead a judgment rendered under it as a bar to a subsequent prosecution for the same offense, the complaint, indictment or information—although not necessarily void for vagueness—is subject to motions to clarify, make more definite and certain, or for a bill of particulars. *State v. Thomas,* 73 Wn.2d 729, 440 P.2d 488 (1968); *State v. Moser,* 41 Wn.2d 29, 246 P.2d 1101 (1952).

Acts or conduct described in a penal statute in the disjunctive or alternative may be pleaded in the conjunctive. *State v. Rooney,* 2 Wn.2d 17, 97 P.2d 156 (1939). If the charge is in the conjunctive, the information is held to charge a single crime committed in any one or all of the ways charged. *State v. Holedger,* 15 Wash. 443, 46 P. 652

(1896); *State v. Brummett,* 98 Wash. 182, 167 P. 120 (1917); *State v. St. Clair,* 21 Wn.2d 407, 151 P.2d 181 (1944). Where, under a penal statute, a single offense can be committed in different ways or by different means and the several ways or means charged in a single count are not repugnant to each other, a conviction may rest on proof that the crime was committed by any one of the means charged. *State v. Parmenter,* 74 Wn.2d 343, 444 P.2d 680 (1968). Defendants raised none of the points embodied in these principles. They must, therefore, be held to have understood the complaint and comprehended the nature of the charges set forth in it. Phrased as it was in the language of the statute, the complaint must, therefore, be deemed legally sufficient to charge a crime.

As we understand the record here, the learned trial judge declared the unlawful assembly statute, RCW 9.27.060(2) and (3), void for three reasons: (1) unconstitutional vagueness and uncertainty generally; (2) abridgment of freedom of speech; and (3) uncertainty in the clause which says "participating therein by his presence." *See* Appendix. Recognizing that the three propositions are interrelated and that the discussion of the one may in part apply to the others, we will take up first the first stated idea.

The language of this statute has been consistently employed at law for several centuries and gradually incorporated into the statutory criminal law. 4 Blackstone, Commentaries *142. Its phraseology is largely time tested and has become the language of everyday usage and common understanding. Such expressions as breach of the peace, disturbance of the peace or the public peace, riotous assemblage and disorderly conduct, convey the legislative intention with sufficient clarity that a person of ordinary understanding should readily comprehend what is meant by them. Although perhaps it would be possible to write this statute in other ways and at the same time interdict and prohibit such behavior as amounts to public disturbances, breaches of the peace, public disorder and unlawful assemblages, the rewriting invites the same risks of "vagueness

and overbreadth"—a judicial expression in itself about as vague and overbroad as one can conjure up on short notice. The terms "disturbance of the peace" and "breach of the peace," and their plurals and various tenses, we find have been separately employed at least 23 times in statutes in this state.[3] Presumably through long usage and in the belief that the words of the statutes constitute their own best definition, the legislature has not thought it necessary to define them.

■■ Words of a statute not particularly defined are to be given their ordinary, everyday meaning. If the legislature uses a term well known to the common law, it is presumed that the legislature intended it to mean what it was understood to mean at common law. *Irwin v. Rogers,* 91 Wash. 284, 157 P. 690, L.R.A. 1916E 1130 (1916); *Fransen v. State Bd. of Natural Resources,* 66 Wn.2d 672, 404 P.2d 432 (1965); RCW 4.04.010; RCW 9.01.150.

■ Acts of the legislature are presumed to be constitutional. If a statute is susceptible of two or more interpretations, some of which may render it unconstitutional, the court will, if possible, give it an interpretation which upholds its constitutionality. *George v. Day,* 69 Wn.2d 836, 420 P.2d 677 (1966); *Tembruell v. Seattle,* 64 Wn.2d 503, 392 P.2d 453 (1964); *State ex rel. Knabb v. Frater,* 198 Wash. 675, 89 P.2d 1046 (1939). A statute or ordinance should not be declared unconstitutional unless it appears beyond reasonable doubt to be so. *Hoppe v. State,* 78 Wn.2d 164, 469 P.2d 909 (1970); *State ex rel. Knabb v. Frater, supra; Port of Tacoma v. Parosa,* 52 Wn.2d 181, 324 P.2d 438 (1958); *State v. Primeau,* 70 Wn.2d 109, 422 P.2d 302 (1966).

■ Although doubts in a criminal statute are to be construed in favor of the accused and against the state

---

[3]These citations to statutes were produced by an automated law search conducted by the Legislative Information System of the Permanent Statute Law Committee:

RCW 3.28.010; 7.20.010; 7.48.230; 7.48.240; 9.05.150; 9.11.050; 9.23.010; 9.27.060 (here before the court); 9.76.030; 10.13.150; 29.81.090; 35.23.440; 35.24.160; 35.27.240; 36.28.010; 38.08.050; 38.24.010; 38.24.030; 38.38.776; 38.44.010; 47.32.130; 62A.9-503; and 71.08.010.

(*Seattle v. Green,* 51 Wn.2d 871, 322 P.2d 842 (1958)), this does not mean that the courts will seek an expanded interpretation rendering the act unconstitutional, but rather that the statute will be applied only to conduct clearly intended to fall within its terms. *Marble v. Clein,* 55 Wn.2d 315, 347 P.2d 830 (1959); *State v. Moser,* 41 Wn.2d 29, 246 P.2d 1101 (1952).

■■ If men of ordinary intelligence can understand a penal statute, notwithstanding some possible areas of disagreement, it is not wanting in certainty. *Nash v. United States,* 229 U.S. 373, 57 L. Ed. 1232, 33 S. Ct. 780 (1913). Thus, a statute making it unlawful to coerce, compel or constrain a radio station to employ persons "in excess of the number of employees needed" in conducting its business was not so vague, indefinite or uncertain as to violate the due process clause of the Fifth Amendment. *United States v. Petrillo,* 332 U.S. 1, 91 L. Ed. 1877, 67 S. Ct. 1538 (1947); *United States v. Harriss,* 347 U.S. 612, 98 L. Ed. 989, 74 S. Ct. 808 (1954). Where a statute is specifically directed at a manifest evil and couched in language drawn from history and practice, courts should not "parse the statute as grammarians or treat it as an abstract exercise in lexicography." *Beauharnais v. Illinois,* 343 U.S. 250, 253, 96 L. Ed. 919, 72 S. Ct. 725 (1952). Courts are obliged to read the statute in what was there described as the "animating context of well-defined usage." Similarly, it was held in *Heard v. Rizzo,* 281 F. Supp. 720 (E.D. Pa. 1968), *aff'd per curiam,* 392 U.S. 646, 20 L. Ed. 2d 1358, 88 S. Ct. 2307 (1968), that the terms "rout, unlawful assembly" were terms of quite precise definition at common law, and that a statute which declared "whoever participates in any riot, rout, unlawful assembly or affray, is guilty of a misdemeanor" was not unconstitutionally vague. Federal courts are to apply to state statutes the construction given them by the state courts. *Beauharnais v. Illinois, supra; cf. Comstock v. United States,* 419 F.2d 1128 (9th Cir. 1969). Accordingly, a person of ordinary understanding, charged with assembling with others with intent to disturb the public peace, or to threaten a breach of the peace, should

have little difficulty in understanding the statute. It is, we think, a sufficiently clear and precise legislative statement to be understood by a person of common understanding. Taken as a whole, the statute (RCW 9.27.060; Laws of 1909, ch. 249, § 298, p. 981) is not void for vagueness or uncertainty, and meets generally the constitutional standards of certainty.

■ Defendants contend, also, that the statute purports to override and deprive one of freedom of speech and the right peaceably to assemble. In our opinion, it does neither. Riot, rout, and unlawful assembly in essence constitute and are closely related to other forms of disturbance of the peace. In prohibiting these acts and similar conduct, neither the legislature nor the common law is denying or abridging those rights specifically enumerated in the constitutions; on the contrary, the statute is designed to prohibit the very conduct which will abridge the rights of others to freedom of speech and peaceable assembly and *their further rights to peace, safety and repose*. 46 Am. Jur. *Riots and Unlawful Assembly* § 2 (1943). Mr. Justice Roberts' language in *Cantwell v. Connecticut*, 310 U.S. 296, 308, 84 L. Ed. 1213, 60 S. Ct. 900, 128 A.L.R. 1352 (1940), cited, approved and affirmed in *Ashton v. Kentucky*, 384 U.S. 195, 199, 16 L. Ed. 2d 469, 86 S. Ct. 1407 (1966), applies with equal force to unlawful assembly and breach of the peace:

> The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. *When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious.*

(Italics ours.)

The basically democratic and explicitly constitutional

rights of peaceable assembly and freedom of speech are not abridged by laws which prohibit gatherings of people intent on criminal activity, or which thwart the conduct of groups who, having lawfully assembled, formulate a purpose to breach the peace, or injure persons or property or do any other unlawful acts. The constitutional provision that Congress shall make no law abridging "the right of the people peaceably to assemble, and to petition the government for a redress of grievances" (U.S. Const. amend. 1), though applicable to the states, does not deprive the people of their right to legislate against mob action, riots and violent trespass upon their institutions. Members of a mob bent on a lynching if forcibly dispersed by peace officers are in no position to complain that they have been deprived of the rights of peaceable assembly and freedom of speech.

Fears that a statute might in one situation or another be misapplied provide little basis for holding it unconstitutional. For example, a demonstration held on the grounds or yard of a local jail to protest the arrest of fellow demonstrators the preceding day where the demonstrators had refused on request to leave the grounds, was held criminally actionable under a trespass law. Answering the defendants' contention in that case that their presence at the jail site was in a constitutionally protected exercise of freedom of speech, peaceable assembly and petition of grievance, the Supreme Court declared:

> The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this "area chosen for the peaceful civil rights demonstration was not only 'reasonable' but also particularly appropriate . . . ." Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on, *Cox v. Louisiana, supra,* at 554-555 and 563-564. We re-

ject it again. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose.

(Footnote omitted.) *Adderley v. Florida,* 385 U.S. 39, 47, 17 L. Ed. 2d 149, 87 S. Ct. 242 (1966). *See, also, Cox v. Louisiana,* 379 U.S. 536, at 554, 13 L. Ed. 2d 471, 85 S. Ct. 453 (1965), for the statement that constitutional guarantees of freedom imply the existence "of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy." Freedom of speech has been and will be categorically upheld by the judiciary. *Stromberg v. California,* 283 U.S. 359, 75 L. Ed. 1117, 51 S. Ct. 532 (1931). But freedom of speech does not carry with it a correlative right to exercise it in every circumstance, everywhere, every moment of every day. The colonial revolutionists did not intend to loose the wild and disintegrating forces of lawlessness and anarchy upon a Union they had paid such a price to create.

We are of the opinion that RCW 9.27.060(2) and (3), prohibiting as it does three or more persons from gathering together with intent to disturb the public peace, or after assembling to attempt any acts or threaten to do anything tending to produce a breach of the peace or to injure or damage property, does not purport to and does not operate to abridge, limit or vitiate any rights guaranteed by the constitutions. As we earlier stated:

> *When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious.*

(Italics ours.) *Cantwell v. Connecticut,* 310 U.S. 296, 308, 84 L. Ed. 1213, 60 S. Ct. 900, 128 A.L.R. 1352 (1940).

Defendants finally contend and the court found the statute to be repugnant to the constitutions because of its provision that "every person participating therein by his presence, aid or instigation, shall be guilty." The court based its ruling in part on the idea that innocent bystanders or passersby, or persons caught in a crowd, so to speak, or those wholly innocent of the intent or purpose of the un-

lawful assembly could be held guilty simply by being there.

Such are the limitations of the English language that there is hardly a criminal statute in the books which cannot in one degree or another be analyzed into an absurdity. Apply enough sophistry to a statute, collate its convolutional genesis, envelope it with sufficient rhetoric, stretch the internal logic of the law far enough, and most any part of the criminal code can—superficially, at least—be made to appear indefinite, uncertain, overbroad, or downright unintelligible. By bringing sufficient palaver to bear, the point is reached where a highly intelligent and educated man will be unable to understand what every man of common understanding will be obliged to comprehend.

 The offense of unlawful assembly originated in our jurisprudence at common law. Despite its statutory definition and prohibition, it is a common-law crime. 4 Blackstone, Commentaries *142; *What Constitutes Offense of Unlawful Assembly,* Annot., 71 A.L.R.2d 875 (1960); 46 Am. Jur. *Riots and Unlawful Assembly* § 2 (1943); 91 C.J.S. *Unlawful Assembly* § 1 (1955). It thus is a crime malum in se, as distinguished from offenses mala prohibita, or acts deemed wrongful merely because prohibited. As a crime malum in se, it must be done with requisite mens rea, or guilty mind, to be criminally actionable. *State v. Turner,* 78 Wn. 2d 276, 474 P2d 91 (1970). This alone rules out innocent bystanders, passersby or persons caught in a crowd who are ignorant of or have no way of reasonably knowing the purpose or intent with which the gathering assembled, or what intent or purpose may have developed among them after they had gathered. One who commits none of the prohibited acts and merely happens to be present at an unlawful assembly without intent to disturb the peace or to engage in conduct threatening a breach of the peace, or to do injury to persons or property or to commit other unlawful acts, or does not remain there after a person of ordinary and reasonable understanding would become aware of the unlawful purpose, would not be guilty of violating this statute. *Kinoy v. District of Columbia,* 400 F.2d 761 (D.C. Cir. 1968); *Heard v. Rizzo,* 281 F. Supp. 720

(E.D. Pa. 1968), *aff'd per curiam,* 392 U.S. 646, 20 L. Ed. 2d 1358, 88 S. Ct. 2307 (1968). This does not mean, however, that evidence of remaining in the face of requests or lawful orders would not be admissible to show the unlawful intent or design contemplated by the statute where lawfully constituted peace officers or others authorized by law in the reasonable exercise of lawful police powers and in a reasonable effort to protect lives, and property, and to maintain the public peace, request or direct the assembled persons to leave the area where they have assembled.

The term, participates by his presence, thus does not include innocent bystanders, mere passersby, casual pedestrians or other persons who, without intent, purpose or design to do other than be where they are, find themselves among a crowd or group of people. To participate by one's presence at an unlawful assembly means to engage actively in the prohibited conduct, to go there or remain there, or willfully to fail to leave there after forming an intent with others to do the things prohibited by the enactment.

"Participate" is an active verb. It is to be read in the context of the entire unlawful assembly statute and in the light of the delineation of that offense in preceding paragraphs of the statute. RCW 9.27.060. Participating by one's presence in an unlawful assembly is the very antithesis of an innocent and unwitting presence, and requires for conviction evidence or inference from evidence to show an intent or design to engage in or further the unlawful acts while being present at the assembly, *i.e.,* carry out any purpose in such a manner as to disturb the peace, or attempt or threaten to do so, or attempt or threaten injury to any person or property, or attempt or threaten any other unlawful acts. *Cf. Comstock v. United States,* 419 F.2d 1128 (9th Cir. 1969), for a different view under the Federal Assimilative Crimes Act, 35 Stat. 1088, 18 U.S.C. § 13, pending interpretation of this statute by the courts of this state.

The courts have not furnished a judicially approved formula for drafting criminal statutes, and the constitutions do not prescribe such a formula. All that is required by law is that a person of common understanding could be said to

understand what conduct is prohibited or what acts are required of him. The language need not be lawyerlike, technical or involve terms of legal art. That the courts might draft the enactment with greater clarity and precision than the legislature has done, affords no basis for throwing out the statute—and the decisional law in criminal cases affords little basis for any assumption that judge-written law is more precise, clear or certain than statutory law.

Reversed with directions to try the defendants on the complaint.

HAMILTON, C. J., FINLEY, HUNTER, NEILL, and McGOVERN, JJ., and DONWORTH, J. Pro Tem., concur.

#### APPENDIX

#### Order of Dismissal

"THIS MATTER having come on regularly for trial before the Honorable Solie M. Ringold, one of the judges of the above-entitled court, the State of Washington being represented by Charles O. Carroll, Prosecutor of King County, Washington, Neil Shulman and Lawrence Mosler, deputy prosecutors appearing, defendant Dixon being represented by Christopher Young, defendant Gossett being represented by Andrew Young, defendant Miller being represented by Michael Rosen, Ronald J. Meltzer also appearing for all defendants; and defendants having moved to dismiss this cause on the grounds that RCW 9.27.060(2)(3) is violative of the constitutional rights of the said defendants as contained in the 1st and 14th amendment to the Constitution of the United States, and the court having read the briefs submitted by counsel and heard argument of counsel, and the court finding itself in agreement with the motion of the defendants for the following reasons:

"When first amendment rights are involved, the Court may consider the question as to whether or not the statute in question is so broad as to encompass within its scope constitutionally protected conduct, and would thus infringe upon rights guaranteed by the first amendment to the constitution. The court need not wait until there is an authoritative construction of the particular statute, or that based upon the facts in the particular case the application of the statute to these facts would be unconstitutional.

"The Supreme Court of the United States in numerous cases, including *Edwards v. South Carolina,* 372 U.S. 229, 9 L.Ed.2d 697, 83 S.Ct. 680 (1963). *Cox v. Louisiana,* 379 U.S. 536, 13 L.Ed.2d 471, 85 S.Ct. 453 (1965), and *Terminiello v. Chicago,* 337 U.S. 1, 93 L.Ed. 1131, 69 S.Ct. 894 (1948), has indicated that where the language is so broad that its sanction may apply to conduct protected by the constitution, such

statute is violative of rights guaranteed by the first amendment to the Constitution.

"In the instant case, under Subsection (2) of the statute one who has assembled "with the intent to carry out any purpose which may disturb the peace" could be found guilty. Under Subsection (3) of the statute, merely being assembled and having the assembly subsequently becoming unlawful permits the conviction of any person lawfully present even though that person may not be engaging in the subsequent unlawful act.

"The language of Subsection (2) permits conviction for community disapproval of actions that are constitutionally permitted. It places great discretionary power in the hands of officials charged with the duty of law enforcement. As it was aptly put by the circuit court in *Landry v. Daley,* 280 F. Supp. 938 (1968):

"'If the scope of the power permitted these officials is so broad that the exercise of constitutionally protected depends on their own subjective views as to the propriety of the conduct, the statute is unconstitutional.'

"Subsection (3) in addition to having the vices inherent in Subsection (2) permits conviction of an individual present at a lawful assembly when three or more in the assembly act in an unlawful manner even though that individual does not participate in these acts, raising the spectre of guilt by association.

"Maintenance of the opportunity for free political discussion is a basic tenet of our constitutional democracy. RCW 9.27.060 (2) and (3) has a chilling effect upon the exercise of first amendment rights and particularly upon the exercise of the right to freely assemble.

"It is hereby ORDERED, ADJUDGED AND DECREED that plaintiff's complaint be dismissed with prejudice.

"It is further ORDERED, ADJUDGED AND DECREED that the cash bail of defendants be and it hereby is exonerated."

STAFFORD, J. (concurring)—I concur in the result and general rationale.

ROSELLINI, J. (concurring in the result)—As I understand the majority opinion, it holds that this statute does not apply to an assembly for the purpose of exercising the rights of free speech and/or petition guaranteed by the first amendment to the United States Constitution and article 1, sections 4 and 5 of the constitution of this state.

I interpret the majority's opinion to mean that the prosecution cannot prove a defendant's participation in an unlawful assembly merely by showing that he was among those present—in other words, that the "mens rea" cannot be inferred from the mere fact that a defendant was pres-

ent at such an assembly. Or stated still another way, as I understand the majority opinion, it holds that the prosecution must prove, as a part of its case, that any person charged was an active participant in a breach of the peace before a conviction can be had under this statute. As thus interpreted, I agree that the statute does not interfere with the right of peaceable assembly or deny due process of law and, therefore, I concur in the result.

NEILL and McGOVERN, JJ., concur with ROSELLINI, J.