[No. 35731. Department Two. August 31, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLARD R. LINK, *Appellant.**

*Cheadle, Clanton & Woeppel*, by *Frederick A. Clanton*, for appellant.

*Sid Buckley*, for respondent.

HUNTER, J.—This is an appeal from a conviction of grand larceny. The information charged the defendant (appellant) with the commission of the crime as follows:

"That the said Willard R. Link on or about the 20th day of April, 1959, in the County of Stevens, State of Washington, then and there being, did then and there obtain from another, to-wit: Leo C. Beck, property of the value of more than $75.00, to-wit: a bank check in the amount of $208.00, by color or aid of a fraudulent or false representation, impersonation or pretense, to-wit: that he then and there had for sale and would deliver immediately

*Reported in 364 P. (2d) 433.

upon the payment of said sum of $208.00, one (1) used John Deere No. 7 Mower, the property of one Gene Henderson, when in fact the said Defendant, Willard R. Link, had no John Deere No. 7 Mower for sale or otherwise, could not deliver the said John Deere No. 7 Mower, and in fact the said Gene Henderson did not exist . . ."

At the close of the trial and prior to the submission of the case to the jury, the defendant interposed a motion challenging the sufficiency of the evidence, which was denied. On appeal, the defendant contends the trial court erred in denying the motion.

The evidence introduced by the state (respondent) and the defendant essential to the consideration of this contention is as follows.

The defendant was a salesman for a machinery business in Spokane. He had grown up with Leo Beck, the complaining witness, who became engaged in the business of farming in partnership with his brother in Stevens county. The defendant had sold farm machinery to the Beck brothers prior to March, 1959, at which time he was requested by Leo to find a John Deere mower for him. The defendant stated that he knew of such a mower, and would endeavor to find it. On April 20, 1959, he returned to the farm and advised Leo Beck that he had purchased a mower for him from a man named Gene Henderson, who lived at or near Dusty, Washington, for the sum of $200 plus sales tax in the amount of eight dollars. He stated that the mower was practically new and that he had a bill of sale for it, which he exhibited. This purchase was satisfactory with Leo Beck, whereupon he instructed his wife to deliver a check in the sum of $208 to the defendant. The bill of sale was delivered to Leo Beck, and he was advised that Henderson would deliver the mower to the Beck brothers in the very near future. The defendant did not advise the Becks that the bill of sale was not signed by Henderson, but rather, as the defendant later testified, it was signed by him in behalf of Henderson at the latter's request.

By May, 1959, the mower had not been delivered. At that time, Leo Beck so advised the defendant by telephone. The

defendant reassured Mr. Beck and stated he would see Henderson about the delivery. Another inquiry and reassurance was made between Mr. Beck and the defendant in June, 1959. When no mower was forthcoming from this inquiry, Leo Beck confronted the defendant yet another time, and the defendant replied that Henderson had loaded the mower at Dusty, Washington, and was supposed to have taken it to the Beck farm, but instead had taken it to Walla Walla, Washington, and placed it in storage. He thereupon stated, "It looks like I can't get the mower from the man . . . I'll pay you; it looks like I'm stuck." He gave a check to Leo Beck in the sum of $208 with instructions to hold it for a while until he would have sufficient funds in the bank. The check was deposited and returned marked "no account." Leo Beck made an additional nonproductive effort for the defendant to obtain delivery of the mower, and thereafter, in September, 1959, an information was filed charging the defendant with grand larceny. In the following spring of 1960, the defendant repaid the $208 to Leo Beck. At that time, the defendant stated to Beck that Henderson had been some sort of a farming associate with a man named Lloyd Day in the area of Dusty, Endicott or Central Ferry, Washington. Several witnesses for the state, who were well acquainted with the Endicott area, testified they had never heard of Gene Henderson on the Day ranch or in that area. Leo Beck testified he was unsuccessful in attempting by telephone to locate Henderson or anyone in the Endicott, Colfax or Central Ferry area who knew him. Willard Beck, Leo Beck's brother, testified he was unable to locate Henderson by inquiry at the grocery store and the garage in Dusty, Washington. Tom Moffitt, a deputy sheriff, testified he had made inquiry of five persons in Endicott and five persons in Colfax, and none of these people had ever heard of Henderson. It is undisputed that Day left the area sometime after the sale of his ranch in January of 1959, and the defendant was unable at the time of the trial to locate either Day or Henderson, if there was a man named Henderson, and their whereabouts was unknown.

The defendant's story concerning the mower which he claimed to have acquired for Leo Beck was consistent for the most part. He identified the mower as the John Deere mower which belonged to and was kept by a man named Gene Henderson on the Day ranch where he was working. He testified he had seen Henderson on the ranch on several occasions when he had visited the ranch after the spring of 1958 and before the ranch was sold in January of 1959. According to the defendant's testimony, Henderson and Day left the ranch together and went to Walla Walla, Washington after the ranch was sold, where he purchased the mower from Henderson. The defendant insists that he first saw this mower on the Day ranch in the spring of 1957, and thereafter, he saw it several times on the Day ranch before the ranch was sold. Inconsistent with this evidence of the existence of Henderson and the mower is the testimony of Ernest Helt, who owned and lived on a ranch adjacent to the Day ranch. Mr. Helt testified he was well acquainted with Lloyd Day and his ranch; that he knew all of Day's hired hands employed during the period from the spring of 1958 until Day left the ranch in January, 1959, with the exception of temporary harvest workers; that during this period, Day had only one hired hand, other than harvest help, and this hired hand's name was Melvin Ferguson. Ernest Helt further testified he had occasion to observe the equipment used on the Day ranch and all other equipment in the machinery shop or elsewhere on the ranch, and that he had never seen a John Deere mower of the type the defendant represented he had acquired, and also, that he had never seen on the Day ranch a tractor of the type which could tow such a mower. Also, according to Mr. Helt's testimony, Melvin Ferguson was the hired hand who had helped Day move his belongings from the ranch to Walla Walla, and he had offered a job to Ferguson, which he accepted. He thereupon worked for Mr. Helt until the latter part of March, 1959.

It appears clear under the information that the burden was upon the state to prove beyond a reasonable doubt the nonexistence of the mower or Gene Henderson in order

to establish a *prima facie* case of the defendant's guilt. The defendant contends the state failed to sustain this burden.

While we agree much of the state's evidence is inconclusive by itself to prove the nonexistence of Gene Henderson or the mower, the evidence as a whole, in view of Ernest Helt's testimony, is sufficient to justify the jury in concluding there was no such person as Gene Henderson on the Day ranch from the spring of 1958 until January, 1959, who owned a mower as the defendant represented. From this the jury would be justified in finding, beyond a reasonable doubt, that the representations made by the defendant that he had acquired a John Deere mower from Henderson, and that it could be delivered within a few days upon demand, were false, and the defendant knew them to be false, but made the false representations in order to obtain $208 from Leo Beck. Therefore, we are satisfied the evidence supports the jury's verdict.

■ The defendant further contends the trial court erred in denying his motion to dismiss the information on grounds it did not charge the crime of larceny, since there was no allegation of the element of intent. However, the defendant's motion to dismiss the information was not made until after the state had presented its case, which included proof introduced without objection on the element of intent. Therefore, the information is deemed to have been amended to conform with the proof so as to include this element of the crime. Rule of Pleading, Practice and Procedure 101.04W (2), RCW Vol. 0; *State v. Berg*, 49 Wn. (2d) 86, 298 P. (2d) 519 (1956).

■ In the remaining assignment of error, the defendant contends the trial court erred in admitting certain testimony on grounds that it constituted hearsay. We disagree. On two of these instances, the defendant did not make a timely objection or a motion to strike. As to the remaining instance, no prejudice resulted to the defendant. The allegedly objectionable question was directed to Tom Moffitt, in which he was asked whether, during his inquiry for Gene Henderson, any persons other than two named

individuals told him they had seen or heard of Henderson. His answer was in the negative. Just prior to this question, the witness testified, without objection from the defendant, that one of these named individuals stated he knew Henderson. Having acquiesced in this line of questioning, the defendant cannot now contend he was prejudiced by the subsequent testimony. Furthermore, none of this matter was of sufficient significance to prejudice the defendant in the jury's consideration of the crucial evidence.

The judgment of conviction is affirmed.

FINLEY, C. J., MALLERY, DONWORTH, and FOSTER, JJ., concur.