[No. 38654. Department One. December 29, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER PRIMEAU
et al., *Appellants*.*

*Reported in 422 P.2d 302.

*Ziontz, Pirtle & Fulle,* by *Robert L. Pirtle,* for appellants.

*Charles O. Carroll, J. Robert Walker,* and *Neal J. Shulman,* for respondent.

HALE, J.—This struggle over pigs and dogs and their place in semiurban society, like most wars, has its roots in what went on before. When Irene and Peter Primeau moved to Kirkland in 1948 to ultimately rear a family of 14 children there on a 13-acre tract, they had little reason to worry about their neighbors. The rural atmosphere and open fields surrounding their home gave them ample privacy and freedom to live largely according to their own choice. They raised pigs, goats, dogs and other farm animals for several years without inciting any apparent animosity in their neighbors.

But times and districts change and, with the passing years, a steady influx of people altered the neighborhood from one of small tracts to that of a predominantly residential area. In 1958, King County adopted resolution No. 18801, zoning the district for single family residences (R-6), and prohibiting kennels and piggeries. The Primeaus continued to raise pigs and dogs, and people kept on coming into and building their homes in the district. Five years after the adoption of the zoning resolution (18801), two neighbors brought a suit for injunction to stop the Primeaus from raising pigs. The court issued a decree, which, while allowing the Primeaus to keep pigs in designated numbers, prescribed rather precise conditions of cleanliness for the care, feeding and maintenance of the animals, and ordered the pens sequestered from the ready sight of neighbors and travelers upon the adjoining road. The Primeaus took no appeal from this decree.

Battle was next joined when the neighbors brought civil contempt proceedings against the Primeaus for violating the decree. After a formal trial, the court issued a decree

holding the Primeaus in contempt and they appealed. This court affirmed the finding of contempt, but reduced the fine from $500 to $100, and modified the decree insofar as it required the Primeaus to remove some lumber, crates and junked automobiles from their property. *Mathewson v. Primeau,* 64 Wn.2d 929, 395 P.2d 183 (1964).

The next campaign started with a skirmish in justice court when, on a mailed summons and complaint filed in the Northlake District Justice of the Peace Court for King County, the prosecuting attorney charged the Primeaus with one count of maintaining a public nuisance (RCW 9.66.010) by operating a piggery so as to permeate the neighborhood with obnoxious odors, and five counts of violating the zoning code by illegally operating a kennel on their property (resolution No. 18801).

From a judgment of guilty and $100 fine imposed on each of the six counts, the Primeaus appealed and had a trial de novo before a jury in superior court. Before submitting the case to the jury, the trial court dismissed counts three through six, and the jury returned a verdict of guilty upon the remaining counts one and two, on each of which the court imposed a fine of $100.

Defendants assign error to the conviction on count 1, a charge of maintaining in a residential district a piggery "which permeates the district with obnoxious odors" in violation of RCW 9.66.010. They say RCW 9.66.010, the nuisance statute under which the charge is laid, is unconstitutional because it is too vague, indefinite, and uncertain to measure up to the constitutional requirements of a criminal statute.

■ One who challenges the constitutionality of a statute carries the heavy burden of demonstrating its invalidity beyond a reasonable doubt. *Casco Co. v. Public Util. Dist. No. 1,* 37 Wn.2d 777, 226 P.2d 235 (1951). An act of the legislature is presumed to be constitutional and valid and ought not be declared invalid unless it appears to be so beyond a reasonable doubt. *Union High School Dist. No.*

*1 v. Taxpayers of Union High School Dist. No. 1,* 26 Wn.2d 1, 172 P.2d 591 (1946).

 Statutes purporting to denounce public nuisances are usually couched in general language, but if the wording apprises a person of common understanding of the conduct sought to be proscribed, then it is not too vague or indefinite to meet the constitutional tests. The language of RCW 9.66.010 as here invoked, does, we think, inform a person of ordinary understanding that one commits a public nuisance, *i.e.,* a crime against the order and economy of the state, by committing any acts in an unlawful manner in such a way as to annoy, injure or endanger the comfort, repose, or health of any considerable number of persons.[1]

The wording of the statute, although broader in at least one respect, seems largely declaratory of the common law, and, thus, for many years has been deemed sufficiently specific to define a nuisance to persons of ordinary understanding. *Goodrich v. Starrett,* 108 Wash. 437, 184 Pac. 220 (1919); *State ex rel. Warner v. Hayes Inv. Corp.,* 13 Wn.2d 306, 125 P.2d 262 (1942). Its language is neither more general nor less specific than the readily accepted common-law definition set forth in 1 Odgers, The Common Law of England 230 (10th ed. Broom 1911), which defines nuisance as:

> Any unlawful act, which without any direct physical contact or interference endangers the lives, safety, health, comfort or property of the public, outrages public decency, or obstructs the public exercise or enjoyment of any right common to all His Majesty's subjects, is a common or public nuisance.

---

[1]RCW 9.66.010:

"A public nuisance is a crime against the order and economy of the state. . . .

. . . .

"Every act unlawfully done and every omission to perform a duty, which act or omission

"(1) Shall annoy, injure or endanger the safety, health, comfort, or repose of any considerable number of persons; . . .

". . . .

"Shall be a public nuisance."

Blackstone, by a curious coincidence, lends a classical aura to the instant charge in describing the keeping of hogs as a nuisance thus:

> Also if a person keeps his hogs, or other noisome animals, so near the house of another that the stench of them incommodes him and makes the air unwholesome, this is an injurious nuisance, as it tends to deprive him of the use and benefit of his house. 3 Blackstone's Commentaries 217.

■ Although the charge must apprise a defendant with reasonable certainty of the nature of the offense, it is usually deemed sufficient if it enables him to prepare his defense and plead any judgment in bar to a subsequent prosecution for the same offense. *State v. Hoyle,* 114 Wash. 290, 194 Pac. 976 (1921). We conclude that the statute and count one are both sufficiently specific to apprise a person of ordinary understanding as to the nature of the crime charged and explicit enough to enable a defendant to interpose a judgment thereunder in bar of a second prosecution for the same offense.

■ Defendants also assign error to the admission of evidence including eight photographs which described the appearance of the Primeaus' piggery and the surrounding terrain. Although the accusation in count one specifically relates to smells, that is, charges an affront to the olfactory sense of a considerable number of persons, we think that the evidence concerning the appearance of the Primeaus' piggery was material and relevant to establish the source of the stench and whether the Primeau piggery produced it.

We need not and do not decide whether unsightliness or extreme ugliness may, under some circumstances, constitute a nuisance. We think evidence describing the appearance of the Primeau pigpen was properly admitted as being inextricably commingled with the malodors coming from the area. A composite picture drawn from the photographs and the word descriptions supplied by many witnesses allowed the jury to find that the Primeaus maintained near a public road and among their neighbors a malodorous pigsty bounded by sagging, decrepit, patched-up fencing festooned

with garbage, enclosing hogs wallowing in muck and mud—a pen littered with garbage, refuse, debris, and filth against a backdrop of junked automobile bodies occupied by numerous dogs as sleeping quarters—altogether depicting a place from which, within the ordinary experience of mankind, a stench would naturally be deemed to emanate. We think the evidence derived by the sense of sight was entirely relevant to the evidence derived from the sense of smell. In this instance, what the eyes beheld, the nose confirmed—that the stench was no olfactory illusion. The evidence derived from both sight and smell thus appearing mutually corroborative, the photographs and description of the piggery were properly admitted.

Other assignments of error directed to count one seem without merit and will not be discussed. Judgment and sentence imposed on count one is, therefore, affirmed.

As to the charge of illegally operating a kennel set forth in count two, defendants have from the outset challenged it as an accusation which does not state a crime. The complaint, brought under § 2.12 "K", King County zoning code, resolution No. 18801, charges that the Primeaus:

> did allow an existing violation of the King County Zoning Code to continue uncorrected in that they maintained a kennel on their property by allowing adult dogs in excess of three to collect thereon, said property located in a residential district, to-wit: 9750 - 124th N. E. outside the corporate limits of Kirkland . . . in violation of King County Resolution Number 18801 . . . .

■■ We are doubtful that this language, purporting as it does to charge the illegal operation of a kennel as defined in the zoning code, bears more than a coincidental resemblance to the code's definition of a kennel. The zoning code describes a kennel as follows:

> *Kennel*: A pack or collection of more than three (3) adult dogs, kept or bred for hunting, sale, exhibition or domestic use.

Elsewhere the code makes it unlawful to maintain a kennel in an area zoned residential (R-6). Under the King County zoning resolution, one does not operate a kennel by

merely allowing in excess of three adult dogs to collect or gather on his property. One has no kennel under the zoning code unless he maintains or keeps more than three dogs on his property for either breeding, hunting, exhibition or domestic use, or for sale. Where the allegations of operative facts in a criminal charge negate the words of conclusion describing the crime set forth in the same formal accusation, no amount of evidence can make such a bad charge good.

Expressed another way, if the complaint does not at the outset charge a violation of the criminal code, or describe a common-law crime otherwise cognizable by our courts, a verdict of guilty will not convert a noncrime into a crime. Count two fails to substantially charge an offense.

The state now urges, however, that the defendants were not surprised by the evidence offered in proof of count two and suffered no prejudice thereby. Plaintiff implies that any inadequacies in count two were cured by such evidence, and that the complaint should now be deemed amended to conform to the proof, and thus held sufficient to charge an offense.

Formerly by our decisions, and now under Rule of Pleading, Practice and Procedure 101.04W, RCW vol. 0, relating to criminal procedure, an information or complaint will ordinarily be considered amended to conform to evidence introduced without objection if the amendment entails no substantial prejudice to the defendant. But even under this liberal rule for the amendment of pleadings in criminal cases, the evidence must be in proof of a *crime substantially charged.*

In those cases holding the information or complaint so amended to conform to the proof, we note that the charge, standing alone, substantially apprises the accused of the offense charged even though it may have been lacking somewhat in specific allegations of fact or formal allegations may have been omitted. *State v. Link,* 58 Wn.2d 642, 364 P.2d 433 (1961); *State v. Berg,* 49 Wn.2d 86, 298 P.2d 519 (1956); *State v. Johnson,* 32 Wn.2d 268, 201 P.2d 223

(1949). But where, as in *State v. Olds,* 39 Wn.2d 258, 235 P.2d 165 (1951), the information substantially failed to apprise the accused of the nature and cause of the accusation against him, amendment to conform to the proof was disallowed.

Count two, we think, fails substantially to set forth an offense. In purporting to charge the Primeaus with illegally operating a kennel, it failed to substantially apprise the Primeaus of the offense whereof they stood accused. The judgment of guilty and sentence of $100 fine imposed on count two is reversed, and count two is, accordingly, dismissed. Each party shall bear his respective costs.

ROSELLINI, C. J., OTT and HUNTER, JJ., and LANGENBACH, J. Pro Tem., concur.

February 24, 1967. Petition for rehearing denied.

[*]Reported in 422 P.2d 312.