[Nos. 47947-0, 48067-2, 48068-1. En Banc. June 24, 1982.]

SEATTLE SCHOOL DISTRICT NO. 1, ET AL, *Petitioners,*
v. THE STATE OF WASHINGTON, ET AL,
*Respondents.*

REESE LINDQUIST, ET AL, *Appellants,* v. JOHN
SPELLMAN, *as Governor, Respondent.*

KIPP BLACKWELL, ET AL, *Petitioners,* v. JOHN
SPELLMAN, *as Governor,* ET AL,
*Respondents.*

*Michael W. Hoge, Foster, Pepper & Riviera, Camden M. Hall, G. Richard Hill, Perkins, Coie, Stone, Olsen & Williams, Lawrence B. Hannah, David J. Burman, Sandra Driscoll, Zelensky, Keough & Mallett, John J. Keough, Inara Horton, Sweet, Dussault & Neff, William Dussault,* and *Carmela Bowns,* for petitioners Seattle School Dist., et al.

*Edward A. Hemphill* and *G. P. Sessions,* for petitioners Blackwell.

*Judith A. Lonnquist,* for appellants.

*Kenneth O. Eikenberry, Attorney General, Malachy R. Murphy, Deputy,* and *Timothy R. Malone, Assistant,* for respondent.

BRACHTENBACH, C.J.—This matter came before the court on a motion for injunctive relief. Petitioners, Seattle School District 1 and others, asked this court to enjoin Governor Spellman from enforcing Executive Order 81–17 as it applied to them. Executive Order 81–17 instituted an across–the–board expenditure reduction program to meet the state's recent financial crisis. Following oral argument on October 5, 1981, this court filed its order denying the requested relief. Since that time the Legislature has met twice in an attempt to solve the financial crises which prompted Executive Order 81–17 and this lawsuit. While forgoing comment on the merits of the Legislature's recent actions, we take this opportunity to emphasize that our October decision was limited to a procedural finding that the petitioners had failed to meet the requirements for issuance of an injunction under our injunction statute, RCW 7.40.

RCW 7.40.020 limits when an injunction may be issued. That section states:

> When it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of

which during the litigation would produce great injury to the plaintiff; or when during the litigation, it appears that the defendant is doing, or threatened, or is about to do, or is procuring, or is suffering some act to be done in violation of the plaintiff's rights respecting the subject of the action tending to render the judgment ineffectual; or where such relief, or any part thereof, consists in restraining proceedings upon any final order or judgment, an injunction may be granted to restrain such act or proceedings until the further order of the court, . . .

The statute has been generally construed to require that the plaintiff show (1) a clear legal right, (2) a well grounded fear of immediate invasion of that right and (3) substantial injury. *Tyler Pipe Indus., Inc. v. Department of Rev.,* 96 Wn.2d 785, 792, 638 P.2d 1213 (1982).

Petitioners have failed to demonstrate adequately that there has been an immediate invasion of a clear legal right. Petitioners' reliance on RCW 28A.41.130, § 87(3)(a) of the Appropriations Act and *Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 585 P.2d 71 (1978) establishes only that they have the right to an ample provision for education. *See Seattle Sch. Dist.,* at 513. They have not yet shown, however, that they have a clear legal right to a particular dollar amount of funding. Consequently, petitioners did not establish the prerequisites for injunctive relief. We could not therefore grant such relief. We reserve comment on the merits of the substantive case until such time as that issue is before us.

STAFFORD, DOLLIVER, and DIMMICK, JJ., concur.

UTTER, J. (dissenting)—The majority refuses to enjoin the Governor from enforcing Executive Order 81–17 instituting across-the-board expenditure reductions on the grounds that there has been no showing of an immediate invasion of a clear legal right. I disagree. While there may be no clear legal right by schools to a particular dollar amount of funding, the constitution is nonetheless clear that it is the "paramount duty of the state to make ample

provision for the education of all children residing within its borders . . ." Const. art. 9, § 1.

The words "paramount duty" and "ample provision" in our constitution not only declare policy, explain goals and designate objectives to be accomplished, they declare a constitutionally imposed duty. *Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 479, 585 P.2d 71 (1978). To allow across-the-board reductions completely negates the mandatory language of our constitution. This is not to say that no reductions can be made in the face of a state–wide fiscal crisis. The constitution does not so declare. Its apparent meaning, however, is that the expenditures for education of children residing within the state must be treated in a different manner from other state expenditures. While cuts may be made, they can be made only in a degree that reflects the paramount obligation of the State, within the limits of its resources, "to make ample provision" for education of its children.

DORE, J. (dissenting)—On August 7, 1981, the Seattle School District, 17 other school districts, numerous parents and students and others, filed an original action seeking extraordinary relief against various state officers, including the Governor, the Attorney General, the State Superintendent of Public Instruction and members of the Washington State Board of Education (cause 47947-0). The School District asserted that RCW 28A.58 fails to adequately define "basic education" and that chapter 340 of the Laws of 1981 fails to adequately fund it. On September 17, 1981, Governor Spellman issued Executive Order 81–17, declaring a financial emergency and establishing an expenditure reduction program pursuant to RCW 43.88.

The petitioners then filed a motion requesting an injunction prohibiting enforcement of the executive order. The Washington Education Association filed an action in Thurston County Superior Court, also seeking injunctive relief from Executive Order 81–17. Lindquist v. Spellman, Thurston County cause 81–2–01250–4. On September 23, the

trial court denied petitioners' request for an injunction. They now appeal here. On September 24, 1981, a third action seeking relief from Executive Order 81–17 was filed in this court by a Washington public school student and his father. Blackwell v. Spellman, cause 48068–1. These three cases were consolidated and argued to this court.

On October 5, 1981, in a 5–to–4 decision, this court filed an order denying an injunction to prevent the Governor from reducing existing school appropriations by a threatened 10.1 percent. Since that time, a special session of the Legislature was called and has now adjourned. During that session, appropriation bills were passed reducing school appropriations previously passed in the 1980–81 regular session by 2.4 percent, or $81,326,000. Such reductions in appropriations for common schools lower the amount of funds for "basic education" requirements as defined in the 1980–81 budget appropriations bill.

The State and the Governor maintained they had the right to reduce school appropriations pursuant to chapter 270, section 7 of the Laws of 1981, which provides:

> If at any time during the fiscal period the governor ascertains that available revenues for the applicable period will be less than the respective appropriations, the governor *shall* revise the allotments for the total funds which are appropriated to the superintendent of public instruction for support of state–wide programs and which ultimately will be distributed to local school districts so as to prevent the making of expenditures in excess of available revenues.

(Italics mine.)

I was one of the four Justices who favored granting a temporary injunction, as I found that an emergency existed and irreparable damage to this state's educational schools and system will be caused by a reduction of the appropriation for common schools below the need established by the Legislature for minimum "basic education". In addition, the Governor acted pursuant to chapter 270, section 7 of the Laws of 1981, which I believe to be unconstitutional when used to reduce funds appropriated to the common

schools for basic education.

I

RCW 7.40.020 provides that an injunction may be issued

When it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce great injury to the plaintiff; . . .

In seeking an injunction, the plaintiff must show (a) a clear legal right, (2) a well grounded fear of immediate invasion of that right, and (3) substantial injury. *Sutherland v. Southcenter Shopping Ctr., Inc.,* 3 Wn. App. 833, 478 P.2d 792 (1970). These requirements have also been characterized as necessity and irreparable injury. *Holmes Harbor Water Co. v. Page,* 8 Wn. App. 600, 508 P.2d 628 (1973).

II

In *Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 585 P.2d 71 (1978) (hereinafter referred to as *School Funding*), this court held that Const. art. 9, § 1 imposes upon the State the paramount duty of making ample provision for the education of all resident children. We ordered the Legislature to define "basic education" and to make ample provision for its funding through regular and dependable tax sources by July 1, 1981. *School Funding,* at 537. By this decision, we made "basic support of the common schools" a constitutional mandate.

The Legislature, in responding to the court's request, defined "basic education" in RCW 28A.58.750–.760 (Laws of 1977, 1st Ex. Sess., ch. 359), and appropriated funds for the 1981 school budget in accordance with these guidelines. RCW 28A.41.130 provides that "[b]asic education shall be considered to be fully funded by those amounts of dollars appropriated by the legislature pursuant to [The Washington Basic Education Act of 1977]". Laws of 1977, 1st Ex. Sess., ch. 359, § 4. Chapter 340, section 87(3)(a) of the Laws

of 1981 (State Operating Budget) provides that "[t]he appropriations in this section . . . shall constitute 100% of formula as provided in RCW 28A.41.130 . . ." The Legislature obviously intended to fulfill its constitutional duty to fund basic education programs through its 1981 school appropriations, and also intended that the amount funded was the minimum amount needed to provide that "basic education".

An act of the Legislature is presumed to be valid, and unconstitutionality must be established beyond a reasonable doubt. *State v. Hood,* 24 Wn. App. 155, 600 P.2d 636 (1979); *State v. Primeau,* 70 Wn.2d 109, 422 P.2d 302 (1966). Once the Legislature determines the dollar amount of "basic education" for schools, the Governor must adhere to the constitution and express his viewpoint in accordance with its provisions. His only remedy, if he disagrees, is to use the veto power which the constitution provides.

In addition, our founding fathers set up a separate department of education to be administered by a statewide *elected* official, known as the Superintendent of Public Instruction. Once school funds are passed into his possession for distribution in accordance with the mandate of the Legislature, the Governor has no authority to curtail them if they are designated to supply the funds for "basic education". The Governor first must secure a constitutional amendment if he feels that an emergency exists to justify such drastic action. The people will then have the right to their view, which they can express at the ballot box.

The executive reduction is unconstitutional because the statute delegating emergency power to the Governor abrogates the power given the Legislature under article 3, section 12 of the state constitution. This statute also limits the autonomy of state agencies as provided in the constitution. On its face it is a constitutional amendment which has not been voted on by two–thirds of both houses of the Legislature and the people of this state.

Under article 3, section 12[1] of the state constitution, which provides the procedure for legislative overriding of gubernatorial vetoes, the Governor must send the appropriations bill back to the Legislature if he vetoes it. The Legislature then has the opportunity to pass the bill over the Governor's objections by a two–thirds vote of both houses of the Legislature. Under this constitutional provision, the Governor's power to affect appropriations terminates at the time he vetoes legislation and sends it back to the Legislature. In the case of school appropriations, the authority to control the funds then transfers from the Legislature to the Superintendent of Public Instruction who has the duty to supervise "all matters pertaining to the public schools of the state". RCW 28A.03.030; Const. art. 3, § 22. Chapter 270, section 7 of the Laws of 1981 usurps legislative power and the constitutionally mandated power delegated to the Superintendent of Public Instruction by amending a constitutional provision which can only be amended by a two–thirds vote of both houses of the Legislature and approval of the people of Washington at the

---

[1] § 12. Veto powers. Every act which shall have passed the legislature shall be, before it becomes a law, presented to the governor. If he approves, he shall sign it; but if not, he shall return it, with his objections, to that house in which it shall have originated, which house shall enter the objections at large upon the journal and proceed to reconsider. If, after such reconsideration, two–thirds of the members present shall agree to pass the bill it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two–thirds of the members present, it shall become a law; but in all such cases the vote of both houses shall be determined by the yeas and nays, and the names of the members voting for or against the bill shall be entered upon the journal of each house respectively. If any bill shall not be returned by the governor within five days, Sundays excepted, after it shall be presented to him, it shall become a law without his signature, unless the general adjournment shall prevent its return, in which case it shall become a law unless the governor, within twenty days next after the adjournment, Sundays excepted, shall file such bill with his objections thereto, in the office of secretary of state, who shall lay the same before the legislature at its next session in like manner *as if it had been returned by the* governor: *Provided,* That within forty–five days next after the adjournment, Sundays excepted, the legislature may, upon petition by a two–thirds majority or more of the membership of each house, reconvene in extraordinary session, not to exceed five days duration, solely to reconsider any bills vetoed."

polls. Const. art. 23, § 1. This statute allows the Governor to simply wait until the Legislature has adjourned, then bypass legislative control altogether.

Additionally, the power given the Governor under this emergency statute clearly exceeds acceptable limits. Under the budget and accounting act,[2] the Governor has the right to regulate expenditures in many areas, but educational expenditures are particularly prohibited.[3] Therefore, chapter 270, section 7 of the Laws of 1981 is void on its face. In any event, the Governor, as well as the Legislature, has a duty to provide ample funding for "basic education" of Washington children. *School Funding,* at 512. Therefore, chapter 270, section 1, which purports to authorize the Governor to reduce funding below the required "ample" level, is unconstitutional.

## III

Washington school districts cannot provide basic educational services if the injunction is not granted and the reduction is implemented. The students of Washington have a clear right to a basic education as defined under The Washington Basic Education Act of 1977 and as implemented under the 1981 appropriations act. *School Funding,* at 500. The Governor's order constitutes an immediate and clear threat to that right. *School Funding.*

## IV

The injury caused by the majority's decision to deny the injunction is both obvious and irreparable. Since the appropriation funds only the barest of necessary educational programs, a reduction of funds for even 1 day necessarily deprives Washington students of their constitutional right to an adequate education. Once lost, the quality of instruction and knowledge cannot be regained. By refusing to grant the requested injunction, the majority forces the

---

[2] RCW 43.88.

[3] RCW 43.88.115.

school districts to reduce "basic education" in our state during the next biennium. This will manifest itself in fewer teachers, larger classes, less maintenance, fewer nurses, less transportation, to name but a few items. This was a responsibility given to the Legislature, not the Governor, by our founding fathers. The burden is on the State, not the school districts, to show absence of irreparable damage. In this instance, the State failed to present evidence showing absence of such damage.

The appellants have shown the clear legal right of the children of this state to an appropriation adequate to fund "basic education". *School Funding.* The Governor is requesting denial of the injunction based upon an unconstitutional statute. This statute abrogates the power given the Legislature under article 3, section 12 of the state constitution and limits the autonomy of the educational system of this state. As such, the statute is merely a device for cutting "basic education" funds below what is needed to supply "basic education". Denial of this injunction will lead to an immediate invasion of the constitutional right of this state's children to a "basic education" and cause irreparable damage.

It is for these reasons I would have granted the injunction.

ROSELLINI and WILLIAMS, JJ., concur with DORE, J.