592 So.2d 710 (1991)
STATE of Florida, Appellant,
v.
SCM GLIDCO ORGANICS CORPORATION and Seminole Kraft Corporation, Appellees.
Nos. 89-2465, 89-2937.
District Court of Appeal of Florida, First District.
December 23, 1991.
Rehearing Denied January 24, 1992.
*711 Robert A. Butterworth, Atty. Gen., Laura Rush, Asst. Atty. Gen., for appellant.
Edward M. Booth, Booth & Arnold, and Tim E. Sleeth and Alan D. Henderson, Smith & Hulsey, Jacksonville, for appellee SCM Glidco.
John A. DeVault, III, Charles P. Pillans, III, and Thomas M. Beverly, of Bedell, Dittmar, DeVault & Pillans, Jacksonville, for appellee Seminole Kraft.
VICTOR CAWTHON, Senior Judge.
These two criminal appeals by the state from orders of dismissal of the County Court in and for Duval County come directly to this court because each trial judge declared a state statute invalid, Fla. R.App.P. 9.030(b)(1)(A) and Section 26.012(1), Florida Statutes, and because each declared the same statute invalid, the appeals have been consolidated.
Both respondents, Glidco Organics Corporation and Seminole Kraft Corporation, operated paper mills in Duval County and both were charged with violations of Section 823.01, Florida Statutes[1], but only *712 Kraft was in 1988 charged with violations of Chapter 403, Florida Statutes.
Both trial court judges dismissed the common charges because they found Section 823.01, Florida Statutes, to be unconstitutionally vague after making a preliminary finding that the section superseded the common law and that Section 775.01, Florida Statutes[2], therefore prohibited reference to the common law of nuisance to supply a definition of nuisance as used in Section 823.01, Florida Statutes.
We disagree with the preliminary finding because we feel that while the exception in Section 775.01, Florida Statutes, may prevent the English common law on the crime of nuisance from being in full force in this state, it does not prohibit the use of English case law as an aid in establishing legislative intent, State v. Hagan, 387 So.2d 943 (Fla. 1980).
The failure of the trial judges to consider English case law necessarily impeded their proper consideration of the constitutionality of the statute involved and this together with the principle that "... every reasonable doubt must be indulged in favor of the act, the constitutionality of which is questioned," Holley v. Adams, 238 So.2d 401 (Fla. 1970) and the Florida Supreme Court's recognition of the difficulty of writing specificity into nuisance statutes as shown by the following quotation from Orlando Sports Stadium v. State, 262 So.2d 881 (Fla. 1972):
It is not possible to define comprehensively "nuisances" as each case must turn upon its facts and be judicially determined.
Id. at 884, causes us to conclude that it was error to declare Section 823.01, Florida Statutes, unconstitutional.
However, we find that the dismissal of the charges of violations of Section 823.01, Florida Statutes, was correct because of the clear legislative intent manifested in Section 403.021, Florida Statutes, that Chapter 403, Florida Statutes, should cover the entire subject of air pollution and that earlier, nonspecific legislation should be inapplicable thereto, Berkley v. State, Department of Environment of Environmental Regulation, 358 So.2d 552 (Fla. 1st DCA 1977); Dade County School Board v. Ingraham, 428 So.2d 283 (Fla. 3d DCA 1983) approved Ingraham v. Dade County School Board, 450 So.2d 847 (Fla. 1984); Zedalis v. Foster, 343 So.2d 849 (Fla. 2d DCA 1976).
We therefore hold that Section 823.01, Florida Statutes, has been superseded by Chapter 403, Florida Statutes insofar as any application of that section to air pollution is concerned.
In addition to the violations of Section 823.01, Florida Statutes, which we have just discussed, the respondent Kraft was charged with violations of Chapter 403, Florida Statutes, the constitutionality of which has not been seriously questioned in this litigation.
The trial court held that the state was estopped from prosecuting Kraft for the alleged violations of Chapter 403, Florida Statutes, because of the consent decree entered into between the State of Florida, Department of Environmental Regulation, and Kraft on October 28, 1986, the pertinent provisions of which read as follows:
42. Nothing herein shall be construed as an admission of liability by Respondent [Seminole Kraft Corporation] nor as a release of any liability by the Department or BESD [the City of Jacksonville, Bio-Environmental Services Division].
43. The Department and BESD hereby expressly reserve the right to initiate appropriate legal action to prevent or prohibit the future violation of applicable statutes, or the rules promulgated there-under.
* * * * * *
45. The Department and BESD, for and in consideration of the complete and timely performance by Respondent of the obligations agreed to in this Consent Order, hereby waive their right to seek *713 judicial imposition of damages against Seminole Kraft, or civil or criminal penalties for violations outlined in this Consent Order. Respondent waives its right to a hearing or judicial review of the terms of this Consent Order, except in cases of third party intervention.
46. Except as set forth herein, entry of this Consent Order does not relieve Respondent of the need to comply with all other applicable federal, state, or local laws, regulations, or ordinances. The entry of this Consent Order does not abrogate the rights of substantially affected persons who are not parties to this Consent Order, pursuant to Chapter 120, Fla. Stat.
47. The terms and conditions set forth in the Consent Order may be enforced in a court of competent jurisdiction pursuant to Sections 120.69 and 403.121, Fla. Stat. Failure to comply with the terms of this Consent Order shall constitute a violation of Section 403.161(1)(b), Fla. Stat.
Kraft pled estoppel as an affirmative defense pursuant to Fla.R.Crim.P. 3.190(b) & (c), and there was no traverse filed prior to the hearing on the motion to dismiss as required by Fla.R.Crim.P. 3.190(d).
We agree with the trial judge that the state attorney is the attorney for the state and it is the state and not the state attorney who can be estopped by the official acts of its department heads, and more specifically, as in this case, by the head of the department which we have previously recognized in this opinion to have been created by the legislature to, among other things, protect the environment from air pollution. Since the affirmative defense of estoppel was adequately pled; i.e., all the essential elements such as compliance with the consent order of October 28, 1986, having been alleged under oath and since there was no traverse filed, the dismissal of the counts to which this defense was directed was proper.
We note that the opinion in State v. Higgins, 437 So.2d 180 (Fla. 4th DCA 1983), which is cited by the state in support of its claim that its oral traverse at the time of the hearing should have been accepted, gives three additional reasons  any one of which would seem to be adequate  for reversing the dismissal.
The dismissal in each appeal is affirmed but the holding in each case that Section 823.01 is unconstitutional, is disapproved.
WIGGINTON, J., concurs.
ERVIN, J., concurs and dissents with written opinion.
ERVIN, Judge, concurring and dissenting.
I concur with the majority's conclusion that Section 823.01, Florida Statutes, is not unconstitutionally vague. I dissent however, from those portions of the majority's opinion holding (1) that section 823.01 has now been superseded by Chapter 403, Florida Statutes, to the extent, as stated by the majority, that the former statute attempts to regulate air pollution, and (2) that the state is estopped from prosecuting defendant Kraft for alleged violations of chapter 403.
Although, as stated, I concur with the majority's disposition of point I, I consider that it would be helpful to a more thorough understanding of the term "public nuisance" to discuss in greater detail the reasons why section 823.01 survives a vagueness challenge, in addition to those advanced by the majority. The informations filed against the two defendants charged each with separate acts of public nuisance on separate dates by emitting objectionable odors into the atmosphere, which tended to annoy the community, contrary to the provisions of section 823.01.[1] In deciding that the statute on which the informations were based was unconstitutionally vague, the county court judge specifically declined to resort to the common law of England which, pursuant to Section 775.01, Florida *714 Statutes, is made applicable to crimes in Florida if "there is no existing provision by statute on the subject." Relying upon this provision, the lower court concluded that because the common law regarding public nuisances has been superseded by section 823.01, reference to the common law for the purpose of curing any deficiency in the language of the statute was unnecessary, and, in that the statute omits essential provisions which are necessary to place persons of common intelligence on notice as to what conduct is prohibited by the statute, section 823.01 must be declared unconstitutionally vague.
While stating the correct test for gauging the vagueness issue, the county judge, in my opinion, nonetheless misapplied it in reaching his decision. This test "is whether men of common understanding and intelligence must necessarily guess at [the statute's] meaning. To meet the constitutional challenge of vagueness, a statute must convey a sufficiently definite warning as to what conduct is proscribed." State v. Rodriquez, 365 So.2d 157, 159 (Fla. 1978). In Rodriquez, the court was confronted with the question of whether Section 409.325(2)(a), Florida Statutes (Supp. 1976), criminalizing the fraudulent use of food stamps, was unconstitutionally vague. In applying the above test, the court upheld the statute because the language, "in any manner not authorized by law is guilty of crime," required reference to state and federal food stamp laws, and therefore, after considering the challenged statute in pari materia with other provisions of Chapter 409, Florida Statutes, as well as certain federal regulations, the court deemed the statute sufficiently definite to give reasonable notice regarding what conduct was forbidden.
Although section 823.01 does not  unlike section 409.325(2)(a)  contain a provision expressly directing resort to other statutes or common law, I cannot conceive that such an omission constitutes a material defect in the statute. Nor can I accept the trial court's conclusion that reliance on the common law as an aid to a reasonable understanding of the nature of the offense proscribed by the statute is foreclosed because the legislature has enacted a statute pertaining to the same subject. The Florida Supreme Court has commented, in another case involving a vagueness challenge, that whether a particular statute can be considered valid "is contingent on how well-defined the controversial language has become through common law, trade usage, or perhaps federal law (as the intent of the Legislature is to bestow precision to the statute through reference to federal law)." D'Alemberte v. Anderson, 349 So.2d 164, 168 (Fla. 1977) (emphasis added). Accordingly, a statute that generally tracks the common law or is declaratory of the same can survive a constitutional attack based upon a vagueness challenge.
In my judgment the lower court should have analyzed section 823.01 in a manner similar to that undertaken by the Supreme Court of Washington in State v. Primeau, 422 P.2d 302 (Wash. 1966). There, the prosecuting attorney, relying upon that state's public nuisance statute, charged the defendants with the offense of maintaining a public nuisance by operating a piggery, causing obnoxious odors to permeate the neighborhood. Washington's public nuisance statute (Wash. Rev. Code § 9.66.010) defined a public nuisance as "[e]very act unlawfully done and every omission to perform a duty, which act or omission (1) [s]hall annoy, injure or endanger the safety, health, comfort, or repose of any considerable number of persons." In rejecting the defendant's argument that the statute was unconstitutionally vague, the court sustained the statute by referring to the common law of England, and thereupon concluded that the statute sufficiently informed a person of ordinary understanding of the conduct necessary to commit the crime of a public nuisance. The court explained that the statute's
language is neither more general nor less specific than the readily accepted common-law definition set forth in 1 Odgers, The Common Law of England 230 (10th ed. Broom 1911), which defines nuisance as:
"Any unlawful act, which without any direct physical contact or interference endangers *715 the lives, safety, health, comfort or property of the public, outrages public decency, or obstructs the public exercise or enjoyment of any right common to all His Majesty's subjects, is a common or public nuisance. * * *"
* * *
Although the charge must apprise a defendant with reasonable certainty of the nature of the offense, it is usually deemed sufficient if it enables him to prepare his defense and plead any judgment in bar to a subsequent prosecution for the same offense. We conclude that the statute and count one are both sufficiently specific to apprise a person of ordinary understanding as to the nature of the crime charged and explicit enough to enable a defendant to interpose a judgment thereunder in bar of a second prosecution for the same offense.
Primeau, 422 P.2d at 305 (citation omitted).
Consequently, I agree with the majority's rejection of the trial court's dismissal of the public nuisance charges for the reasons that section 823.01 must be considered declaratory of the common law regarding public nuisances, and hence must be construed as having sufficiently placed a person of ordinary intelligence on notice that if he or she causes the emission of odors into the atmosphere so as to cause annoyance to the community at large, or a portion thereof, such person commits an unlawful public nuisance.
I cannot, however, agree with the majority's conclusion that section 823.01 has been superseded by the enactment of Chapter 403, Florida Statutes. I would first emphasize that the cases relied upon in the majority's opinion for the proposition that chapter 403 supersedes section 823.01 are distinguishable, because they deal with the situation of a general act following a special act which conflicts with the former in situations in which the two laws relate to the same subject matter. Berkeley v. Department of Envtl. Reg., 358 So.2d 552 (Fla. 1st DCA 1977) (Florida Aquatic Preserve Act conflicted with and thereby superseded earlier law creating Biscayne Bay Aquatic Preserve); Dade County Sch. Bd. v. Ingraham, 428 So.2d 283 (Fla. 3d DCA 1983) (attorney's fee cap in sovereign immunity statute applied to attorney's fee award in personal injury action against school board rather than statute dealing with caps on recovery against state agencies covered by liability insurance), approved, 450 So.2d 847 (Fla. 1984); Zedalis v. Foster, 343 So.2d 849 (Fla. 2d DCA 1976) (notice provision in general law dealing with all public roads superseded and repealed earlier special act notice provision relating only to Pinellas County). The case at bar does not involve a general act that impliedly repealed a special act on the same subject.
My more fundamental disagreement with the majority's decision concerns its tacit conclusion that chapter 403 has impliedly repealed[2] section 823.01, insofar as the latter statute attempts to regulate air pollution. As to this issue, I think it important to restate some general rules of statutory construction regarding the determination of whether a later enacted statute impliedly repeals an earlier one. The general rule is that implied repeals are not favored and will not be upheld in doubtful cases. See State v. Digman, 294 So.2d 325 (Fla. 1974); State v. Sarasota County, 74 So.2d 542 (Fla. 1954); De Coningh v. City of Daytona Beach, 103 So.2d 233 (Fla. 1st DCA 1958). Moreover, before courts should determine that a subsequent statute impliedly repeals one previously enacted, there should appear either a positive repugnancy between the two statutes or clear legislative intent that the later act prescribes the only governing rule. Atkinson v. State, 156 Fla. 449, 23 So.2d 524 (1945). Additionally, a statute which has been repeatedly recognized over a long period of time, such as section 823.01, which was first enacted *716 into law in 1832,[3] will similarly not be held repealed unless there is a showing of diametric repugnancy or an intent to repeal. Calhoun v. Baden, 153 Fla. 663, 15 So.2d 444 (1943). It is of course true that if the later act is intended to cover an entire subject of legislation, it may be considered to operate as a repeal of all prior acts dealing with the same subject. Zedalis v. Foster, 343 So.2d 849 (Fla. 2d DCA 1976).
With these rules of statutory construction in mind, I agree that if one's examination were restricted solely to the declaration of legislative intent in chapter 403, it would be possible to conclude that the legislature intended chapter 403 to regulate all areas of air pollution within the state of Florida. For example, Section 403.021(1), Florida Statutes (1989), provides:
The pollution of the air and waters of this state constitutes a menace to public health and welfare; creates public nuisances; is harmful to wildlife and fish and other aquatic life; and impairs domestic, agricultural, industrial, recreational, and other beneficial uses of air and water.
(Emphasis added.) Subsection (5) similarly declares in part "[t]hat the prevention, abatement, and control of the pollution of the air ... of this state are affected with a public interest, and the provisions of this act are enacted in the exercise of the police powers of this state for the purpose of protecting the health, peace, safety, and general welfare of the people of this state." Yet, when one examines the specific provisions of chapter 403 establishing criminal penalties for certain violations of the pollution laws, it is readily apparent that the conduct criminalized in section 823.01 is far different and more encompassing. Subsections (3), (4), and (5) of Section 403.161 Florida Statutes (1989), create three classes of crimes for specified violations of the pollution laws. Subsection (4) thereof  the criminal penal provision therein most similar to section 823.01  makes it a second-degree misdemeanor[4] for anyone "who commits a violation specified in paragraph (1)(a) due to reckless indifference or gross careless disregard." Subsection (1)(a) in turn provides that it is a violation of chapter 403 for any person "[t]o cause pollution ... so as to harm or injure human health or welfare, animal, plant, or aquatic life or property." Thus, in order to constitute a misdemeanor of the second degree pursuant to section 403.161(4), or, indeed, any of the other classes of crimes listed under section 403.161, proof must be presented of harm or injury. In contrast, proof of annoyance to the community or injury to health of the citizenry in general is required by section 823.01. "Annoy" is defined, among other things, as "to irritate, bother, or make somewhat angry, as by a repeated action, noise, etc." Webster's New World Dictionary 56 (2d College ed. 1980). To "injure", on the other hand, is defined as "to do physical harm or damage to," or to "hurt." Id. at 725.
Thus, we see from the statutory provisions that there is a marked distinction between the language prohibiting a public nuisance and that establishing a violation of section 403.161. There is also an element of proof imposed upon the state by section 403.161(4) that the person charged must have acted with reckless indifference or gross careless disregard before such person may be convicted of a second-degree misdemeanor, different from the proof required by section 823.01, which contains no similar language. Finally, the punishment for one convicted of a misdemeanor of the second degree under section 401.161(4) is, by reference therein to Section 775.082(4)(b), Florida Statutes (1989), a maximum term of 60 days, or a fine of not more than $5,000, or both. The punishment provided for a violation of section 823.01, which refers only to section 775.083, is a maximum fine of $500 for a conviction of a misdemeanor of the second degree.
In my judgment, it clearly appears from an examination of both the conduct proscribed *717 and the penalties provided in the two statutes that the legislature intended each statute to occupy its own separate field of operation. This is because a violation of section 403.161 may but need not constitute a public nuisance, defined as conduct which "violates public rights, subverts public order, decency or morals, or causes inconvenience or damage to the public generally." Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881, 884 (Fla. 1972). A public nuisance usually affects the public at large, whereas a private nuisance only affects an individual or a limited number of individuals. 38 Fla. Jur.2d Nuisance § 5 (1982). In contrast, the language of section 403.161(1)(a), proscribing, inter alia, the harming or injuring of human health, is not explicitly confined to the health of the community at large. As stated in Carawan v. State, 515 So.2d 161, 168 (Fla. 1987), "[A] construction is favored that gives each statute a field of operation, as opposed to a construction that considers the former statute repealed by implication. The courts' obligation is to adopt an interpretation that harmonizes two related statutory provisions while giving effect to both." (Citation omitted.)
This rule of construction, in my judgment, should be applied to the two statutes before us, in that it clearly appears that each has as its purpose the prohibition of different types of conduct. I would thereof reverse the order of dismissal insofar as it holds that section 823.01 has been impliedly repealed by chapter 403.
Nor can I agree with the majority that the state is estopped from prosecuting appellee Kraft for committing certain criminal offenses forbidden by chapter 403, as a result of the consent order earlier entered into between Kraft and the Department of Environmental Regulation. As reflected in the majority's opinion, the consent order expressly states that Kraft would not be subject to criminal prosecution only if it complied with the terms of the order. The majority reasons that because the state failed to traverse Kraft's allegation in its motion to dismiss that it had fully complied with the terms of the consent order, the lower court correctly dismissed those charges against Kraft. In other words, the majority holds that by failing to traverse, the state admitted that Kraft had complied with the consent order. I question, however, the assumption that Kraft's conclusory statement of compliance is a factual allegation, rather than a legal conclusion, which would have to be based upon specific facts. For example, in State v. Anderson, 536 So.2d 1166 (Fla. 2d DCA 1988), it was held that a defendant's representation in her motion to dismiss, that her alleged false statement was not material to the official proceeding and therefore could not constitute perjury, was a legal conclusion rather than an expression of factual matters. See also State v. Sedlmayer, 375 So.2d 887 (Fla. 3d DCA 1979), wherein the defendant asserted that his false statements were immaterial, without identifying testimony that demonstrated that it was immaterial.
I consider that instead of dismissing the charges against Kraft due to the state's failure to traverse, the court should have required Kraft to allege facts which would establish a prima facie case demonstrating that it had complied fully with the terms of the consent order.
I would therefore reverse the order of dismissal as to both appellees, and remand the case for further proceedings consistent with this opinion.
NOTES
[1] 823.01 Nuisances; penalty.  All nuisances which tend to annoy the community or injure the health of the citizens in general, or to corrupt the public morals, are misdemeanors of the second degree, punishable as provided in s. 775.083.
[2] 775.01 Common law of England.  The common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment shall be of full force in this state where there is no existing provision by statute on the subject.
[1] Section 823.01 provides: "All nuisances which tend to annoy the community or injure the health of the citizens in general, or to corrupt the public morals, are misdemeanors of the second degree, punishable as provided in s. 775.083."
[2] There is no language in chapter 403 expressly repealing, in whole or in part, the provisions of section 823.01.
[3] See Historical Note, Fla. Stat. Ann. § 823.01 (West 1976).
[4] Section 823.01 also provides that a violation of its provisions is a misdemeanor of the second degree.